## THE STATE OF CONNECTICUT *vs.* FRANK McGUIRE.

Third Judicial District, Bridgeport, April Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A general revision of the statutes, approved and adopted by the legislature, must be held to contain the entire statute law of the State in force when it goes into effect, regardless of the date at which the different sections incorporated therein were originally enacted.

Prior to 1901 a statute (Rev. 1888, § 1404) prescribed that the punishment for assault with intent to murder should be imprisonment in the State prison for not less than ten years. In that year the Indeterminate Sentence Act (Public Acts of 1901, Chap. 78) was passed which required an indefinite term of imprisonment between certain limits, the maximum limit being the maximum prescribed by law for the particular offense, and the minimum not less than one year. At the same session (1901) a general revision of the statutes was adopted to take effect July 1st, 1902, which incorporated the Act of 1901 without any substantial change, but prescribed that the punishment for assault with intent to murder should be not less than ten nor more than thirty years. *Held:*—

1. That inasmuch as the provision for a minimum punishment had been eliminated in all the other sections of the revision, it could

The State *v.* McGuire.

not be supposed or presumed that it was retained in this particular section (§ 1146) without a purpose; and therefore the trial court correctly ruled that it had no discretion to impose a minimum limit of less than ten years imprisonment upon the accused who had been found guilty of an assault with intent to murder.

2. That the Indeterminate Sentence Act (§ 1535) in providing a minimum limit of *not less* than one year, did not forbid a minimum of ten or more years, and therefore the two Acts were not necessarily inconsistent.

Upon a prosecution for assault with intent to murder, evidence of a statement of the accused to the effect that he had entertained considerable feeling against the person assaulted for six months before the assault, although prior thereto they had been friendly, is admissible as tending to show a motive for the crime.

The State claimed that the accused was unwarrantably suspicious of his wife and jealous of any attention paid to her by one *B*, the person assaulted, but made no claim that anything wrongful had occurred between them. The trial court allowed the accused to testify as to his feelings toward *B* and that he had no desire to injure him, but excluded an inquiry as to whether he suspected or believed *B* had been guilty of any criminal conduct or wrongful act with his wife. *Held* that the testimony excluded did not tend to rebut the claim and evidence of the State, nor disprove the motive which the State claimed to have established; and that it was immaterial, so far as the intent of the accused was concerned, whether his ill will toward *B* arose from an unfounded or a well-founded jealousy.

The shirt worn by *B* at the time of the assault was admitted in evidence to show the location and size of the razor cut alleged to have been made by the accused. *Held* that it was properly admitted for that purpose, notwithstanding it had been washed since the assault.

Evidence of the length of time required to walk at an ordinary gait from one point to another by daylight, is admissible as having some tendency to show how long it would take one familiar with the route to go over it at night.

The accused offered evidence of his peaceable character and in rebuttal the State proved by the record that he had been convicted before a justice of the peace of an assault upon his wife. *Held* that an inquiry of the justice after he had produced the record, whether the evidence in that case turned largely on intoxication, was rightly excluded as not proper cross-examination, and also because it was immaterial.

To constitute an assault with intent to murder, the assault must have been made with malice aforethought and with an intent to kill.

A homicide committed without legal justification or excuse and without any extenuating circumstances, is committed with malice aforethought, and is murder.

Malice aforethought now relates not merely to the state of mind of the accused, but to the moral aspects of the act as indicated by all the conditions and circumstances attending it, and the term has thus come to have a very different meaning from that which it bore originally.

The law defines the circumstances under which a homicide may be justified or excused, or so far extenuated as to reduce the crime to manslaughter.

In the present case the jury were instructed that to constitute the crime charged the accused must have made the assault with an intent to kill and with malice aforethought, but did not tell them that malice aforethought meant malice prepense. *Held* that the accused could not have been harmed by this instruction, since the jury must have found that malice existed prior to the assault, which was all that was essential.

In cases of this character it is not the duty of the court to attempt to define "malice aforethought," for it is practically impossible to do this in such a way as to bring the definition within the comprehension of the average juror. The duty of the court can best be performed by calling the jury's attention to the evidence and claims in the case before them, and telling them what the conclusion of the law is, and what their verdict should be, upon each state of facts which they may be warranted in finding upon the evidence.

In the present case the court properly instructed the jury as to malice and said that it included all those states of mind in which a homicide is committed without legal justification, extenuation, or excuse. *Held* that this was a practical definition of malice aforethought and furnished a better guide to a correct determination of the case than the most elaborate discussion of the subject, especially as there was no claim of any justification or excuse for the assault, nor any circumstances of extenuation, but merely that the accused did not in fact commit it.

When the case requires it, the jury should be instructed as to what the law means by "justifiable" or "excusable," and also what circumstances will in law "extenuate" the crime and reduce it to manslaughter; but when no circumstances are present which will justify, excuse, or extenuate the crime, and no claim is made of their presence, the trial court should so instruct the jury, and leave them to determine whether the accused is guilty of murder in either the first or second degree.

Proof of previous good character is not a defense to a criminal charge, but it should be considered and weighed in determining the question of the guilt of the accused, and may be of importance in closely balanced cases.

The accused complained of the charge of the trial court on this subject of character, contending that it instructed the jury to consider evidence of his peaceable character separately and apart from the

other evidence.  *Held* that the charge was not fairly susceptible to this criticism.

Argued April 18th—decided July 31st, 1911.

INFORMATION for an assault with intent to murder, brought to the Superior Court in New Haven County and tried to the jury before *Case, J.;* verdict and judgment of guilty, and appeal by the accused.  *No error.*

The statute under which the defendant was convicted (General Statutes, § 1146) provides that "every person who shall assault another with intent to commit murder, . . . shall be imprisoned in the state prison not less than ten nor more than thirty years."  Section 1535 provides that when a person shall be sentenced to the state prison, otherwise than for life or in connection with a sentence of execution for a capital offense, or for a violation of § 1336 relating to tramps, the court imposing the sentence shall establish a maximum and minimum term for which the convict may be held in said prison, and that the maximum term shall not be longer than the maximum term prescribed by law as the penalty for such offense, and the minimum term shall not be less than one year, except in cases where there has been a former conviction.  The defendant claimed that this being his first conviction, the court had discretion to fix one year as the minimum term of his sentence.  The court overruled this claim, and ruled that it had no authority to name a minimum term of less than ten years, and in its sentence fixed ten years as the minimum term of the sentence.

The State claimed to have proved that one Frank Brachwitz, who since the death of his wife had lived alone in his house situated on a country road, was assaulted by the accused with a razor, at between eleven and twelve o'clock at night.  Brachwitz was in bed at the time, in an upstairs chamber in his house, and was awakened from sleep by the assault.  The intruder, in making his

escape, left his hat, which the State claimed to have proved belonged to the accused. Brachwitz, from such view of his assailant as he obtained in the dark chamber, and from an exclamation made by the latter, claimed to have recognized the voice and person of the defendant. From this testimony and evidence of statements made by the accused subsequent to the assault, the State claimed to have established his identity as the guilty party. The families of Brachwitz and the accused had been acquainted with each other for some time, and had exchanged visits frequently. They lived upon different highways, and the distance between them could be considerably shortened by going across lots by an existing path. The State claimed to have proved that the defendant, who was of intemperate habits, was unwarrantably suspicious of his wife, and that for six months prior to the assault had entertained feelings of ill will toward Brachwitz, and resented any attention or kindness shown by him to her, and was jealous of him, and shortly before the assault had said to two different persons that he would kill Brachwitz. About a month before the assault, the defendant's wife had left him owing to his intemperate habits.

The defendant claimed that he was not at Brachwitz's house on the night of the assault. He testified that, although he disapproved of Brachwitz's conduct, he had no desire to kill or injure him. Upon his direct examination the defendant, having testified that he "never had any feeling toward Brachwitz, only I thought he did not do just right towards moving the furniture from my house," was asked, for the purpose of showing his state of mind, the following questions, which were excluded: "Did you suspect any criminal conduct? . . . Did you believe that Brachwitz had been guilty of any wrongful action with your wife?"

A shirt worn by Brachwitz on the night of the assault

was produced, and having been identified by him, and a cut therein having been testified by him to have been where he was cut at the time of the assault, was received in evidence against the defendant's objection.

One Hurley, called by the State, having testified that he had gone over the route from Brachwitz's house to the defendant's house, which is the route by which the State claimed the accused must have gone on the night of the assault, was asked, against the defendant's objection: "How long, in your opinion, would it take a man, going at ordinary gait, to go over the road that you have just indicated?" The same witness was permitted, against the objection of the defendant, to testify that the latter stated to him that for the last six months prior to the assault he had considerable feeling against Brachwitz, but prior to that time he considered that they were on friendly terms.

The defendant offered evidence to prove that he had always been a man of peaceful character. In rebuttal the State proved, by the record of a justice court, that he had been convicted of an assault upon his wife. Of the justice, who had been called by the State to produce the record, the defendant, on cross-examination, asked the following question, and it was excluded: "Did the evidence in this case turn largely on intoxication?"

In its charge the court said to the jury: "Evidence has been offered as to the generally peaceable character of the accused. Evidence of this sort is, of course, never pertinent as a defense to a charge of crime clearly established. Its place in the case is more limited. In a close or doubtful case, such evidence may avail one so accused, by raising a doubt based upon the improbability of guilt of one of generally peaceable character."

As to the question of malice, the court charged as follows: "This malice [malice aforethought] is the characteristic mark of all murder as distinguished from the lesser

offense of manslaughter which lacks it. . . . It, therefore, becomes important for you to consider carefully what is meant by malice aforethought known to the law of homicide. It does not mean simply hatred or specific animosity, . . . but it extends to and embraces generally the spirit or state of mind with which one approaches and commits a given act. It may of course be discoverable in a specific, deliberate intent to kill, but it may also be inferred or implied from circumstances which show a wanton and depraved spirit, a mind bent on mischief· and evil without regard to their consequences. It has been said, and I commend the definition to you as a most comprehensive one, that malice in this sense includes all those states of mind in which a homicide is committed without legal justification, extenuation or excuse. If I have made this matter clear, you will see that, to constitute the crime charged in the information, the elements of an assault with the concurrently existing intent to kill, must have been shown, and in addition to those elements, you must be satisfied that he acted with malice aforethought as I have defined that term to you. . . . To sum up, then, if on the whole case you are satisfied beyond all reasonable doubt that Brachwitz was assaulted on the night in question, that there was a concurrent intent by his assailant to kill him, and that the attack was with malice, as I have defined that term to you, and are further satisfied beyond all reasonable doubt that the accused, McGuire, was the assailant, your verdict must be 'guilty as charged.' If you are so satisfied of all these enumerated elements save alone malice, but entertain a reasonable doubt that the attack was a malicious one, then your verdict must be 'guilty of assault with intent to kill.'"

*George E. Beers* and *Charles H. Harriman,* for the appellant (the accused).

*Arnon A. Alling*, State's Attorney, for the appellee (the State).

THAYER, J.  Section 1535 of the General Statutes is a portion of an Act concerning indeterminate sentences which was passed in 1901.  That Act excepts certain cases from its operation, and as to all others where a State prison sentence is provided by then-existing laws, it provides that the court shall not fix a definite term of imprisonment, but shall establish a maximum and minimum term for which the convict may be held in the prison; the maximum term so fixed not to exceed the maximum prescribed by law for the offense of which he has been convicted, and the minimum to be not less than one year.  The Act provides that any person so sentenced, after having been confined in the prison for not less than the minimum term, may be allowed to go at large on parole of the board of parole, if in their judgment he will lead an orderly life if so set at liberty.  The purpose of the Act doubtless was to encourage and hold out hope to the convict that by good conduct and reform he may secure his liberty after the expiration of the minimum term, or at most before he has served the maximum sentence.  At the time this statute was passed, some of the existing statutes prescribing punishment in the State prison fixed a minimum term only, some fixed the maximum only, and some fixed both the maximum and the minimum.  A general law provided that, except in the case of tramps, no sentence to the State prison should be for less than one year.  The law providing the penalty for assault with intent to murder, General Statutes (Rev. 1888), § 1404, then fixed the minimum only.  The sentence was to be imprisonment in the State prison not less than ten years.  The purpose and effect of the indeterminate sentence law was to prevent the fixing of a determinate sentence by the court which

sentenced the convict. It was bound to fix a minimum as well as a maximum term.

Had there been no change in the statutes existing at the time this Act was passed, the court might, by virtue of it, have fixed a minimum term below that established by the existing law. The effect of it would have been to amend the then-existing statutes relating to punishment in the State prison. But at the same session of the legislature at which this Act was passed a general revision of the statutes was made, known as the Revision of 1902, now in force. In that revision no minimum term of imprisonment is provided when the punishment may be in the State prison, except in the case of assault with intent to murder. For this offense it prescribes a punishment of not less than ten nor more than thirty years. § 1146. The minimum of ten years, as provided in the Revision of 1888 and which has long been the minimum punishment for this offense, was thus retained, and a maximum term provided.

This Revision is to be held to contain the entire statute law of the State in force when it went into effect. *Eld* v. *Gorham*, 20 Conn. 8, 15. Sections 1146 and 1535 are thus parts of one act of revision, regardless of the date at which they were originally passed. Section 1146 is in effect a new statute, passed in 1901. It was then changed by fixing a maximum punishment. It is not to be presumed that the minimum term was allowed to remain without purpose, since in the case of all other statutes providing a minimum that provision was eliminated in the revision. An assault with intent to murder is and always has been treated in the statutes as one of the most grave. It was formerly punishable by imprisonment for life. Statutes, Rev. 1821, p. 152. It is possible that in respect to this offense it was deemed well that the court should be limited, as it had been

for more than fifty years, in its discretion as to the minimum punishment.

Section 1146, if any effect is to be given to the provision fixing the minimum term, does not allow the court imposing sentence any discretion to sentence for a minimum term of less than ten years. But section 1535, in providing that the minimum shall not be less than one year, is not inconsistent with this, for it does not prevent the imposition of a minimum sentence of ten years in this case. The two sections can thus be given effect and apply to cases of this character. The trial court was right in so construing them.

The testimony of Hurley that the accused, shortly after the assault was committed, stated to him that for six months he had considerable feeling against Brachwitz, but prior to that time he considered they were on friendly terms, was properly admitted as tending to show motive on the part of the accused.

The accused was permitted to testify as to his feelings toward Brachwitz, and that he had no desire to injure him, but was not permitted to testify whether he suspected any criminal or wrongful conduct on the latter's part with the wife of the accused. The State made no claim that anything wrongful had occurred between the two. Its claim was that the accused was unwarrantably suspicious of his wife, and jealous of any attention shown her by Brachwitz. The excluded testimony, therefore, did not tend to rebut the claim and evidence of the State, or to disprove the motive which it claimed to have established. It is claimed as tending to show the state of mind of the accused as bearing upon the question of intent and the degree of the crime. The accused having testified that he had some feeling against Brachwitz, the fact that it did not arise out of the belief that there had been wrongful and criminal conduct between his wife and Brachwitz, could not have availed

the accused, if the jury found that he left his home at midnight and went several miles to that of Brachwitz, and there assaulted him in his own home with a razor. Whether his ill feeling arose out of unfounded or well-founded jealousy, would not affect the intent with which the crime was committed, or the degree of the crime. If, therefore, the testimony was not inadmissible, it is clear that the accused was not injured by its exclusion.

It was proper to admit in evidence, as an exhibit, the shirt worn by Brachwitz at the time of the assault. It was admissible as tending to show the location and size of the cut claimed to have been inflicted upon Brach-witz while he was in bed. No ground for the objection to its admission is stated upon the record, and none is urged in argument here, except that it appeared that the shirt had been washed after the assault and before it was produced in evidence. This fact would not affect the location or size of the cut, to prove which it was apparently received.

The testimony of Hurley as to the length of time it would take a man, at ordinary gait, to go from the house of Brachwitz to the McGuire house, was competent testimony. The objection to its admission was placed upon the ground that Hurley had not had experience which would justify him in giving an opinion. It appears that the witness had gone over the route claimed by the State to be the one by which the accused went home after the assault. It is claimed that as the witness went over the route by daylight he was not qualified to testify as to the time required at night to make the passage. But this was not the question asked of him. The time required by daylight would be some guide for the jury in determining the time required to make the trip by night, by one familiar with the route. The objection goes to the weight, rather than to the admissibility, of the testimony.

The question put to the justice who produced the record of the conviction of the accused was not proper cross-examination, and was properly excluded. The record spoke for itself as to the offense of which the accused was convicted, and it was of no importance, if true, that the evidence at the trial turned largely on intoxication, and on this ground, also, it was proper to exclude it.

To constitute an assault with intent to murder, the assault must be such that, if successful, the crime would be murder. There must be an assault, therefore, with malice aforethought and with intent to kill, for there can be no murder without malice aforethought, and an intent to murder includes an intent to kill. The intent relates to the condition of mind of the person who commits the assault: his purpose in making it. The intent or purpose to kill may spring from proper motives, such as the desire to save the life of self or child when threatened with death; or it may arise from improper motives, as from hatred toward the person assaulted, or from an evil design in general, a wanton and depraved spirit, a mind regardless of social duty and fatally bent on mischief. When a homicide is committed without legal justification or excuse, and without any extenuating circumstances in law, the law says that it is done with malice aforethought, and is murder. The malice in such case is implied, unless the evidence discloses that the deed was actuated by express malice, as by hatred, or ill will. When an assault is thus actuated by malice, the malice of necessity must antedate the intent and cooperate with it in producing the act, and, no matter for how short a time it existed previous to the forming of the intent to kill, it is malice aforethought. An assault committed under such circumstances is an assault with intent to murder. *State* v. *Fiske*, 63 Conn. 388, 391, 28 Atl. 572.

VOL. LXXXIV—31

Malice aforethought relates not merely to the state of mind of the person who unlawfully kills another, but to the moral aspects of the act as indicated by all the conditions and circumstances attending it. The circumstances may in law justify or excuse the killing, or they may extenuate it, if death results, thus reducing the crime to manslaughter; and hence an assault with intent to kill, under such circumstances, would be one without malice aforethought. The law defines the circumstances under which the killing of one person by another is justified or excused, or so far extenuated as to reduce the crime to manslaughter. Such killing is without malice aforethought; any other unlawful killing of one person by another is a killing with malice aforethought.

The jury in the present case were given the definition of malice long recognized as correct by the courts of this State. And they were told that to constitute the crime charged the assault, with the concurrently existing intent to kill, must have been shown, and that in addition to these elements they must be satisfied that the accused acted with malice aforethought, as that term had been defined to them; and again, that to convict they must find that the attack was made with malice. It is claimed that malice, and not malice aforethought, had been defined to the jury, and that they must have been misled by the charge. It is true that the jury were not told that malice aforethought means malice prepense, and that it must exist prior to the assault and co-operate with it. But they were told that to convict they must find that the attack was made with malice. Under this instruction, the jury to convict must have found that malice existed prior to the assault, which satisfies the defendant's claim.

It was not the duty of the court to define the term "aforethought." It has been said by high authority,

and we think correctly, that it is practically impossible
to so define and explain the term "malice aforethought"
as to bring it within the comprehension of the average
juror. In most cases a more practical and helpful
charge can be given without any attempt to define the
crime charged, or the elements of it, to the jury. They
are to find the facts in the particular case before them.
The court is to apply the law to the facts. As we said
in *Morris* v. *Platt*, 32 Conn. 75, 82, it is not for juries to
apply "great principles" to the particular facts claimed
and found. That is for the court. As the court speaks
in advance of the finding, its duty can best be performed
by calling the jury's attention to the evidence and
claims, and telling them what the conclusion of the law
is upon each state of facts which they may be warranted
in finding upon the evidence, and instructing them as
to the verdict which they should render upon each of
the states of fact which may be found. The jury's at-
tention is thus directed to what is helpful to them in
the performance of their duty, and they are saved from
the embarrassment and confusion which is likely to re-
sult from a mass of definitions which are, in most cases,
of little practical value to them in reaching a verdict.

The court in the present instance not only gave the
customary charge as to malice, but told the jury that it
included all those states of mind in which a homicide
is committed without legal justification, extenuation,
or excuse. A practical definition of malice aforethought
was thus given them which, under the circumstances of
the case, was a far better guide to a correct determina-
tion of the case than the most elaborate discussion of
the subject would have been. There was no claim that
there was any justification or excuse for the assault, or
any circumstances which, if it was committed by the
accused and death had resulted, would have extenuated
the crime and reduced it to manslaughter. The de-

fense was that the defendant did not commit the as-
sault. The jury must have found that he committed
it, and with the intent to kill; and as there were no cir-
cumstances of justification, extenuation, or excuse be-
fore them, no harm could have come to the accused,
·had the court in fact failed to tell the jury what malice
aforethought is.

Under early English statutes denying benefit of clergy,
the crime of murder was practically limited to cases of
wilful, deliberate, and premeditated killing, and it was
then essential that the indictment should charge that
the accused committed the homicide with malice afore-
thought. At this time the *malitia praecogitata* essen-
tial to the crime was express malice existing prior to
and inspiring the killing. When later it was held by
the courts that this malice could be implied, the effect
was to extend the crime of murder so as to include cases
which were not deliberate and premeditated. And it has
so remained. After the crime had been thus extended,
the words "malice prepense" or "malice aforethought"
in their strict literal sense, did not accurately define the
crime. The approved definition of murder, however,
·has continued to be "the unlawful killing of a human
being with malice aforethought"; and it has been cus-
·tomary to define malice aforethought in trials for un-
lawful homicide or attempted unlawful homicide, as
well since the repeal of the English statutes referred to
as before their repeal, when it was an indispensable in-
gredient of the only kind of murder known to the law:
that is, a wilful, deliberate, and premeditated killing.

In the light of its historical development, and in view
of the difficulty of so stating the subject as to give the
jury a fair comprehension of it, it is the better way in
charging the jury for the trial judge not to attempt such
definition, further than to say that while malice afore-
thought is one of the necessary ingredients of the crime

of murder, if they find proven beyond a reasonable doubt the commission of a homicide, and that it was perpetrated without legal justification or excuse, and without circumstances of legal extenuation, the crime proved is murder. It would then be unnecessary to attempt the definition of murder or malice aforethought, or to tell the jury that malice is implied from such a killing.

A clear statement of the acts which would constitute, in the terms of our statute, murder in the first degree, together with an explanation of the meaning of such words as may require explanation, will sufficiently inform the jury as to what is murder in the first degree, and by the terms of the statute (§ 1140) "all other kinds of murder shall be murder in the second degree."

It would, of course, be necessary to instruct the jury, in an appropriate case, as to what the law means by justifiable or excusable, under the circumstances of the case, and what the law means by extenuation, reducing the crime to manslaughter, under the circumstances of the case. When there are present no circumstances in law justifying, excusing, or extenuating the homicide, and no claim that any such are present, the trial judge ought to so state to the jury, leaving the issue of guilt between murder of the first and second degrees.

As a person of previous good character may commit an assault, proof of his good or peaceable character is not a defense to the charge. The evidence may fully establish the guilt of the accused, although it also clearly establishes to the jury's satisfaction that he had previously borne a good character. But it is less probable that such a person would commit crime than that one of bad character should do so, and in cases where the evidence to prove the main fact, or to connect the accused with it, is closely balanced, the fact of good character has and should have weight in determining

the question of guilt. Trial courts may properly call the jury's attention to these facts, and, when requested, should do so. This is what was done in the case before us. The court was calling the jury's attention to the defendant's claims and evidence, and instructing them as to the application and weight of the evidence, and having spoken of his claim of alibi, and of the claim that he had no animosity toward Brachwitz, the court spoke of the evidence as to character in the language complained of. This was not, as claimed, an instruction that the jury should consider only a part of the evidence in the case, or should consider this evidence separate and apart from the other evidence. The jury could not have so understood, for the court, in closing this part of its charge relating to the defendant's claims and evidence, said to them: "You will, therefore, give all this testimony of the defense, careful consideration for its proper purposes, and determine in connection with the State's evidence where the truth . . . lies."

In a sense, the evidence of character was to be considered by itself, to determine whether the accused bore the character claimed. If this fact was proved, it was a circumstance to be weighed with the other facts which were established. If the others, so considered, so clearly established the fact that the accused committed the crime that there was no reasonable doubt of it, the fact of his good character was no longer of any weight. It was proper to so instruct the jury, telling them at the same time, as was done, that they were to consider all the evidence together in reaching their conclusion.

Some other exceptions were taken to rulings on evidence, and portions of the charge, which were not pursued in the argument, and need not be considered here.

There is no error.

In this opinion the other judges concurred.