THE STATE OF CONNECTICUT *vs.* JACK LITMAN ET ALS.

Third Judicial District, Bridgeport, April Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

The nine accused were jointly charged with the statutory crime of
assault with intent to commit murder upon two brothers em-
ployed in a dress-goods factory who were leaving their home
under guard to enter a taxicab furnished by their employer as
a means of transportation to and from work. The State offered
evidence to prove that, about a month before the occasion in
question, the brothers were followed from the factory to their
home by two of the accused in an automobile which was stopped
by the police who arrested its occupants and found it to con-
tain sawed-off billiard cues wrapped in newspapers and similar
to the weapons used in the subsequent assault; that, on the
morning of the crime, an eyewitness observed the nine assailants
escape in two waiting automobiles, but was able to recognize
only two of them among the accused; that this witness picked
up five such billiard cues and an iron pipe which had been thrown
away at the scene of the assault; and that, shortly thereafter,
two automobiles containing similar weapons were intercepted in
an adjoining town, one of which was occupied by five of the
accused, including the two arrested in the preceding month, and
was the same car which had been involved in this previous
arrest, and the other of which carried four of the accused and
bore the same license number as one of the two cars in which
the assailants had made their escape. *Held* that the jury were
justified in concluding that the identity of each of the accused
had been established beyond a reasonable doubt.

The jury is not required to reject the testimony of a witness even
though his credibility has been impeached by proof of convic-
tion of an infamous crime.

The statutory crime of assault with intent to murder (§ 6193 of the
General Statutes) includes the common-law offense of assault
with intent to kill and involves proof, not only of intent to kill,
but also malice aforethought. The malice must be "afore-
thought," that is, previously existent or deliberately entertained,
but not so the intent, for while a homicide must be premeditated
to constitute murder in the first degree, it may be murder in the
second degree even though the intent does not spring into exis-
tence until immediately before the fatal blow.

The fact that one accused of assault with intent to murder desisted

The State *v.* Litman.

from his violence before it led to a fatal result may have some bearing upon his intent, but none upon the question of malice aforethought.

In the present case the accused claimed that the sawed-off billiard cues which they were alleged to have used in the commission of the assault, were not deadly weapons and that there was, therefore, no basis for the finding by the jury of an intent to kill. *Held* (*one judge dissenting*) that while there might be some question as to whether the cues were deadly weapons *per se,* there could be none that the evidence concerning the method with which they were used considered in connection with the surrounding circumstances, warranted the jury in concluding that the intent to kill was proved beyond a reasonable doubt.,

The admission of evidence, with respect to which no objection, motion to strike out, or request to charge, was made, cannot be assigned as error upon appeal.

Evidence concerning the weapons found in the automobiles of the accused before and after the assault, and at the scene of the crime, was admissible to establish their identity and their intent.

The argument of the State's Attorney reviewed and *held* to be unobjectionable.

Argued April 13th—decided June 28th, 1927.

INFORMATION charging the accused jointly with the crime of assault with intent to commit murder, brought to the Superior Court in Fairfield County and tried to the jury before *Jennings, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*Josiah H. Peck*, with whom, on the brief, was *Thomas J. Spellacy,* for the appellants (the accused).

*William H. Comley,* State's Attorney, with whom was *E. Earle Garlick,* Assistant State's Attorney, for the appellee (the State).

HAINES, J. This appeal is based upon the denial of the defendants' motion to set aside the verdicts of guilty, the refusal of the trial court to charge as requested by the defendants, and upon exceptions to a certain portion of the charge as made.

The first reason of appeal requires us to determine whether, upon all the evidence before it, the jury could reasonably have reached the conclusion that these defendants were guilty beyond a reasonable doubt of an assault with intent to kill and murder.

A study of all the evidence satisfies us that the jury would have been justified in finding the following facts established beyond a reasonable doubt: That on September 24th, 1926, two brothers, Enrico and Ulrich Pozzuolo, made their home at the Ambassador Arms, an apartment house in Stamford in this State, and were employed in an establishment in Stamford, owned, by one Mrs. McMahon, with about seventy-five employees, in the manufacture of dress goods. Enrico, the elder of the two brothers, held an important position at the factory, as a designer, being paid $100 per week, and Ulrich was his assistant, both having entered the employment in June, 1926. The proprietor of the factory had for a considerable period before September 24th, 1926, employed a taxicab driver named Ferguson to call for the brothers at the Ambassador Arms each morning about eight o'clock and convey them to their employment at the factory and return them to their apartment at the end of the day. The proprietor also provided two factory guards, Winter and Pfeiffer, to accompany the two brothers to and from their work. It also appeared in evidence without objection, that about a month prior to September 24th, a Flint automobile with a New York license number 9Y9819 and containing five men was seen waiting in front of the factory at the close of the day's business. Two of these men were the accused, Blum and Rosenberg. When the Pozzuolo brothers left for home in the taxicab on this day, they were immediately followed by the five men in the Flint car. Later the same day the police of Stamford arrested Blum and Rosenberg and a third

man named Ober, and examined the Flint car, in which they found two sawed-off billiard cues, each of which was rolled in newspapers. On the morning of September 24th, 1926, the taxicab was waiting at the curb with the guards in front of the Ambassador Arms, to take the Pozzuolo brothers to the factory. As they came from their apartment onto the sidewalk about eight o'clock, nine men rushed upon them attacking them with sawed-off billiard cues which were rolled in newspapers. The brothers were able to get into the taxicab, where the assault was continued, the windows of the cab being smashed by the attackers; the elder of the brothers rushed from the cab and was struck to the pavement and beaten. In the commotion which resulted from the attack these nine men threw away their weapons and ran to two waiting automobiles on the opposite side of the street and escaped in them. Blum and Kakye were recognized in court by an eyewitness of the assault as two of the nine men who thus escaped. The affair was at once reported by this eyewitness to the police, together with the New York number of one of the two cars used by the nine men, 9C8282. This witness then returned to the scene of the assault and picked up from the street five sawed-off billiard cues, four of which were rolled in newspapers, and also a piece of iron pipe which was found on the lawn in front of the Ambassador Arms. Two of the weapons picked up, which were rolled in newspapers, had fresh red stains on the paper. A few minutes after eight o'clock a Flint car bearing the New York license number 9Y9819 and containing five men, was seen going rapidly toward New York City, and was followed by the police in another car, overtaken and stopped as it was going into Greenwich. The men in the car were covered by the revolvers of the police and arrested and taken to headquarters, where they gave

their names as Harris, Corti, Rosenberg, Baer and Blum, and identified in court as five of the accused. Two iron jimmies were found in this Flint car. This was the same Flint car which had followed the Pozzuolos a month previous and from which two sawed-off billiard cues wrapped in newspapers, were taken by the police, after arresting Blum and Rosenberg, two of the five men in the car. Upon telephone request from the Stamford police, the police of Greenwich intercepted another car a few minutes afterward bearing the New York number 9C8282 and arrested the four men who were in it who gave their names as Kakye, Cavus, Tittlebaum and Litman, and were identified as the other four of these nine defendants. A piece of iron pipe and a 32-caliber cartridge with a steel-jacketed bullet, were found in that car by the police. When these four men were arrested, one was heard to say to the others, "Keep your mouth shut," and one of the accused, Litman, had what an officer believed to be a blood stain upon the sleeve of his coat. Both the Pozzuolos were injured—the elder the more seriously, and both required some days of hospital treatment. Afterward they disappeared and have not since been located. The two guards and the driver, Ferguson, also disappeared. The defendants offered no testimony at the trial except the court record of one of the State's witnesses.

In behalf of the defendants it is contended that the State failed to establish their identity beyond a reasonable doubt. An eyewitness testified there were nine men involved in the assault, who escaped in two automobiles. Two of the men he identified as Blum and Kakye, and one of the cars was a Buick number 9C8282. The men who were in this car when arrested soon afterward, driving rapidly toward New York, were identified as Kakye, Cavus, Tittlebaum and Lit-

man.  Kakye and this particular car were thus directly involved in the assault, and it was this car that he was in when arrested, obviously fleeing from the scene of the assault.

The Flint car number 9Y9819 was used by Blum and Rosenberg in following the Pozzuolo brothers from the factory to their apartments, sometime before.  It is sufficiently obvious that this car was also being used to make an escape and when stopped it was found to contain Harris, Corti, Baer, Blum and Rosenberg. Blum and Rosenberg are thus shown to have used this car on both occasions, and Blum was shown to have been one of the nine men fleeing after the assault. Identity is further aided by the finding in both cars of weapons of the same sort as those used in the assault, some of them—the sawed-off billiard cues—having been obviously specially prepared—as were some of those used in the assault.

We are entirely satisfied, upon the fact above summarized and other circumstances before the jury, that they were justified in holding that the identity of these nine men had been established beyond a reasonable doubt.  It is true that evidence was offered that one of the State's witnesses whose testimony aided the identification, had at one time served a term of imprisonment for embezzlement.  While this was a proper attack upon his credibility, the jury were nevertheless at liberty to credit his statements in the present case, as they apparently did.  Indeed, it so dovetails into the circumstances otherwise established, that we think the jury were fully justified in believing the statements of this witness bearing upon the identity of the accused.  The jury apparently considered both the direct and the circumstantial evidence on this question of identity, as their duty required them to do. The whole body of evidence thus considered consti-

tuted proof wholly consistent with the prisoners' identity and inconsistent with any other rational conclusion. *State* v. *Block,* 87 Conn. 573, 579, 89 Atl. 167; *State* v. *Rome,* 64 Conn. 329, 333, 30 Atl. 57.

It is further urged in behalf of these defendants, that the State failed to produce sufficient evidence to establish, beyond a reasonable doubt, the intent to murder. The court carefully and correctly charged the jury as to what proof the law required to establish the intent of the accused.

Our statutory offense of assault with intent to murder (General Statutes, § 6193), as charged in the information in this case, includes the common-law offense of assault with intent to kill. This latter requires proof of an intent existing in the mind of the guilty party. In addition the statutory offense required proof of "malice aforethought."

Counsel for the defense say "an essential of the crime was malice aforethought. This malice has not only not been proven but is negatived by the voluntary desisting of the accused." The fact of desisting, whether voluntary or otherwise, might have a bearing upon the question of intent to kill, but it does not even tend to negative the existence of malice aforethought. "Aforethought" does not apply to the intent to take life, but to the malice. "In understanding malice aforethought malice must not be confounded with intent to take life. It is the malice that must previously exist or be deliberately entertained; the intent may spring into existence and be immediately followed by the fatal blow; and that at common law is murder, and under our statute is murder in the second degree. To constitute murder in the first degree the criminal intent must be conceived and carried into effect, so that the killing may be said to be 'willful, deliberate and premeditated.'" *State* v. *Fiske,* 63 Conn. 388, 391, 28

Atl. 572; *State* v. *McGuire,* 84 Conn. 470, 481, 80 Atl. 761; *State* v. *Taylor,* 70 Vt. 1, 39 Atl. 447.

Counsel fall into error in saying that the charge against these defendants "involves proof of premeditated intent to kill." Premeditation is one of the elements of first degree murder, but need not be established to prove second degree murder. General Statutes, § 6187; *State* v. *Fiske,* 63 Conn. 388, 391, 28 Atl. 572; *State* v. *McGuire,* 84 Conn. 470, 481, 80 Atl. 761.

So far as the intent to kill is concerned, it need not be shown that it was an express intent; it may be inferred from the circumstances and from what was done and from the probability of death resulting. One of the circumstances from which the inference may be drawn would be the use of a deadly weapon. "The intent must be such that if death had ensued the crime would have been murder, though it is sufficient if it would have been murder in the second degree." Wharton on Homicide (3d Ed.) § 138, p. 207.

One who uses a deadly weapon upon a vital part of another will be deemed to have intended the probable result of that act, and from such a circumstance a proper inference may be drawn in some cases that there was an intent to kill. Wharton on Homicide (3d Ed.) pp. 7, 115.

"Any inference that may be drawn from the nature of the weapon and the manner of its use, is an inference of fact to be drawn by the jury upon a consideration of these with other circumstances." *State* v. *Taylor,* 70 Vt. 1, 9, 39 Atl. 447.

The defense insists that the sawed-off billiard cues were not "deadly weapons" within the meaning of this term as used in the law. A pistol, dirk-knife, or gun is a deadly weapon *per se.* Disregarding the piece of iron pipe which was afterward found near the place

of assault, the sawed-off billiard cues were capable of causing death—as testified by the physician, and had at least the potential character of deadly weapons. Whether they were such *per se* may be a close question, depending upon whether their use is likely to produce death, and not merely capable of producing it. The authorities are conflicting upon this precise question, and it may be conceded to be doubtful, but the answer may be found by considering the method of their use.

In view of the evidence as to the way these sawed-off billiard cues were used, the jury might have found, beyond a reasonable doubt, that they were clearly within the definition of "deadly weapons," and the jury were justified in drawing the inference, under all the circumstances, that the intent to kill was present in this assault. That the assault was actuated by malice is too clear to require discussion, and that it was malice aforethought is also clear. The obvious preparation of weapons, the previous trailing of the Pozzuolos, the preparation for escape, the concerted attack and flight of the nine men, is quite sufficient proof. Malice aforethought and the intent to kill being established, we think the jury were entitled to find the accused guilty as charged beyond a reasonable doubt, and the verdict should stand unless other claimed grounds of error are sufficient to change the result.

There are two claimed grounds which are stressed by the defense. It is said the admission in evidence of the iron pipe, picked up near the place of assault, the two sawed-off billiard cues found in the Flint car sometime before, the piece of iron pipe, and the jimmies and a cartridge, all found in one of the cars afterward, was error.

There was examination and cross-examination as to the two sawed-off billiard cues referred to. They were then admitted without objection. No request was at

any time made by the defense for their exclusion and no request to charge was made in connection with them.

As to the first piece of iron pipe, counsel expressly stated to the court when it was offered in evidence that the defense had "no objection." The other piece of pipe and the jimmies and cartridge were likewise admitted without objection by the defendants, then or afterward. They were properly before the jury for such value as they might have in establishing the identity of the defendants and their cars and the purpose and intent with which they made this assault. In *State* v. *Ferrone,* 97 Conn. 258, 263, 116 Atl. 336, the car used by the accused and his companions was searched, and iron bars or jimmies, a loaded cartridge and revolvers were found. We said in that case: "Everything found in the car or upon the person of any occupant of the car, was relevant and competent evidence."

The next claim of the defense relates to a statement made by the State's Attorney in his argument to the jury that "every red-blooded citizen in this State of decent purpose envies the gentlemen of the jury the opportunity they have for service to the State of Connecticut in this case." Objection was made to this statement and the objection was overruled by the court. It amounted to saying that, believing these accused to be guilty of a serious offense, the State's Attorney felt the jury were fortunate in being in a position to vindicate the laws of their State in this case. It added nothing and subtracted nothing from the case, nor are we able to see how it could have trespassed upon the legal rights of the defendants. It was not an appeal to disregard the evidence, and suggested no fact for their consideration which was not already before them.

The claimed error in the charge of the court contained in the tenth reason of appeal, we think is without merit, and the other reasons, variously stated, have been sufficiently covered by what we have said.

The accused had a full and fair trial. The jury was properly instructed upon the law, and so far as we can discover rendered a fair and impartial verdict. This makes unnecessary a consideration of the State's bill of exceptions.

There is no error.

In this opinion WHEELER, C. J., HINMAN and BANKS, Js., concurred.

MALTBIE, J. (dissenting). This being a criminal case, the burden rested upon the State to prove every essential element going to make up the crime charged beyond a reasonable doubt. The jury would not be justified in finding that an attempt to murder had been proven unless the facts established by the evidence were susceptible of no reasonable explanation save that it existed. Assuming that all the facts claimed by the State were established, it still remains true that they are reasonably explainable upon the hypothesis that the accused attempted to do no more than "beat up" the persons they assaulted; indeed, those facts point far more clearly to such an intent than they do to an intent to kill.