## STATE OF CONNECTICUT v. JANET GRAHAM
### (10501)

DUPONT, C. J., O'CONNELL and FREEDMAN, Js.

Argued October 25, 1993—decision released January 25, 1994

*Elizabeth M. Inkster,* assistant public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's

attorney, and *John M. Massameno,* assistant state's attorney, for the appellee (state).

DUPONT, C. J. The state charged the defendant in two separate substitute informations. The two cases were joined together for a single jury trial. In the first case, for actions allegedly occurring on July 15, 1988, the state charged the defendant with (1) unlawful possession of narcotics with intent to sell in violation of General Statutes § 21a-277, (2) unlawful possession of narcotics in violation of General Statutes § 21a-279 (a), and (3) larceny in the sixth degree in violation of General Statutes § 53a-125b. In the second case, the state charged the defendant with (1) larceny in the sixth degree in violation of General Statutes § 53a-125b for actions allegedly occurring between September, 1987, and August, 1988, and (2) unlawful possession of a controlled substance in violation of General Statutes § 21a-279 (c) for actions allegedly occurring during August, 1988. The jury found the defendant not guilty of the first count of the first information, unlawful possession of narcotics with intent to sell, and guilty on all of the remaining counts of both informations.

The defendant appeals from the judgments rendered in the two cases, alleging that (1) the trial court improperly admitted evidence of uncharged misconduct, (2) the trial court improperly charged the jury regarding consciousness of guilt, (3) the trial court improperly charged the jury regarding the effect of good character evidence, (4) the evidence was insufficient to sustain the larceny conviction in the second case, and (5) the trial court imposed a condition of probation that was improper.

The jury could have reasonably found the following facts. In May, 1988, an unaccounted loss of narcotics was discovered at the University of Connecticut's John Dempsey Hospital. At the time, the

distribution of narcotics to individual patients was monitored by means of proof-of-use notebooks. The hospital pharmacy, which delivered narcotics to hospital nursing stations, required the nurses to store narcotics in locked boxes and to log the distribution of narcotics. For each disbursement of narcotics, the nurse involved was required to enter on the proof-of-use sheets the date, time, and dosage of the distribution, as well as the name of the patient receiving the narcotic, the physician ordering the narcotic, and the nurse distributing the narcotic.

After a review of proof-of-use sheets, the hospital pinpointed the loss of narcotics as having occurred at the nursing station on the fourth floor. In response to the discovery, a hospital pharmacist went to the fourth floor station and encountered the defendant, who was a nurse assigned to the station. According to the pharmacist, the defendant said three times that the narcotics box was left open and anyone could have gotten inside the box.

The loss triggered a hospital investigation directed by Barry Gordon, an agent for the department of consumer protection. After discovering further losses in June, 1988, Gordon asked the hospital to assign each nurse to a particular floor. When narcotics losses began to occur on the seventh floor, Gordon conducted a video surveillance of the seventh floor nursing station. The first videotape, although of poor quality, showed the defendant, who was then assigned to the seventh floor, removing the proof-of-use notebook from the counter adjacent to the narcotics box, and going through the narcotics box for a long period of time without removing narcotics from the station.

A second videotape, recorded on July 15, 1988, showed the defendant going through the proof-of-use notebook for a long period of time without making any

entries. The tape showed that after the defendant removed narcotics from the locked storage box, she failed to relock the box. The defendant also brought her pocketbook into the nursing station, and moved it to an area under a sink. Gordon compared the defendant's actions to those of other nurses, and found her actions to be unusual.

After determining that the defendant had made an unusual entry in the proof-of-use notebook, Gordon and Theodore Pawlich, the hospital's assistant director of public safety, sought out the defendant on July 15, 1988. The defendant saw them in a corridor and then entered a bathroom, carrying her pocketbook and a flowered tissue box. Gordon instructed Ann Horbatuck, the nurse manager of the seventh floor, to follow the defendant into the bathroom and to instruct her to come to Gordon's office for questioning.

As Horbatuck entered the bathroom, the defendant exited a stall while a toilet was flushing. The defendant agreed to speak with Gordon and Pawlich. A few minutes later, Horbatuck and Pawlich searched the bathroom and found, in a stall disposal can, a flowered tissue box that contained a packet each of the narcotics MS Contin and Dilaudid. Pawlich testified at trial that the tissue box found in the bathroom was the same box that he had seen the defendant carrying when she entered the bathroom. Gordon and Pawlich also discovered that proof-of-use sheets for MS Contin and Dilaudid were missing from the seventh floor station.

Further investigation revealed that the defendant was the only person who was assigned to work during every period of time when a loss of narcotics occurred. The investigation also disclosed that there were no losses during two periods of time in July when the defendant was not working.

On the date of the defendant's arrest, the Bristol police received an anonymous telephone call directing them to search for a brown plastic bag in a dumpster behind St. Joseph's Church in Bristol. The police found the bag, which contained a prescription container bearing the name of the defendant's daughter, as well as a variety of pharmaceutical items. The police contacted the hospital because they believed that the items had been taken from the hospital. The director of the hospital's pharmacy, Michael Rubino, examined the bag. At trial, Rubino testified that he believed that several items had come from the hospital, and that the items were removed wrongfully from the hospital. Testimony also revealed that the dates and labels of other pharmaceutical items found in the bag indicated that they were taken from several nursing homes between 1984 and 1988. The defendant had worked at those nursing homes during this period of time.

I

The defendant claims that the trial court improperly admitted two sets of uncharged misconduct evidence. The first set of evidence concerned unaccounted for drug losses at the hospital on various dates during the two month period prior to July 15, 1988, which the state claimed was admissible in the first case as misconduct evidence that satisfied an exception to the prior uncharged misconduct rule. The second set of evidence concerned the items from the plastic bag that were identified as being from nursing homes where the defendant had worked, which the state claimed was similarly admissible in the second case.[1] The state argued that the evidence was admissible as uncharged misconduct evidence that satisfied the identity, intent,

[1] The trial court also admitted, as substantive evidence relating to the second case, the items found in the plastic bag that were identified as being from the hospital. The state did not charge the defendant with any crimes relating to the nursing home items.

and common scheme exceptions to the uncharged misconduct rule. The trial court admitted both sets of evidence over the defendant's objections.[2]

Evidence of a defendant's uncharged misconduct is inadmissible to prove that the defendant committed the charged crime or to show the predisposition of the defendant to commit the charged crime. *State* v. *Mooney,* 218 Conn. 85, 126, 588 A.2d 145, cert. denied, U.S. , 112 S. Ct. 330, 116 L. Ed. 2d 270 (1991); *State* v. *Sierra,* 213 Conn. 422, 428, 568 A.2d 448 (1990). Exceptions to this rule have been recognized, however, to render misconduct evidence admissible if, for example, the evidence is offered to prove intent, identity, malice, motive, a system of criminal activity or the elements of a crime. *State* v. *Mooney,* supra; *State* v. *Sierra,* supra. Such evidence may also be used to establish knowledge; *State* v. *Ulen,* 31 Conn. App. 20, 28, 623 A.2d 70, cert. denied, 226 Conn. 905, 625 A.2d 1378 (1993); or to complete the story of the charged crime "by placing it in the context of nearby and nearly contemporaneous happenings." (Internal quotation marks omitted.) *State* v. *Cooper,* 227 Conn. 417, 424–25, 630 A.2d 1043 (1993).

[2] In regard to the evidence of unaccounted for drug losses, the trial court found that the evidence was relevant because it helped establish a fact in issue, "most notably intent and identity." The court, nevertheless, stated that it had "some difficulty" categorizing the evidence as prior misconduct evidence. The court stated that if it was labeled prior misconduct evidence, it fell within the exceptions to the prior misconduct rule, most notably intent, identity, and common scheme. The court also stated that the probative value of the evidence outweighed any prejudice to the defendant.

In regard to the evidence obtained from the plastic bag, the court stated that it believed the evidence was relevant, and that its probative value outweighed any prejudice. The court also explained to the jury before it heard the evidence that this evidence was not offered to prove the bad character of the defendant, or her propensity to commit the charged crimes. The court stated that the evidence was offered only to prove intent, identity, or system of conduct.

Uncharged misconduct evidence must satisfy a two part test in order to be admitted under one of the exceptions. First, the evidence must be relevant and material to at least one of the claimed exceptions, and, second, the evidence's probative value must outweigh its prejudicial effect. *State* v. *Cooper*, supra, 425; *State* v. *Mooney*, supra, 127; *State* v. *Sierra*, supra, 429. Since the admission of uncharged misconduct evidence is a decision within the discretion of the trial court, we will draw every reasonable presumption in favor of the trial court's ruling. *State* v. *Cooper*, supra, 426–27. We will reverse a trial court's decision only when it has abused its discretion or an injustice has occurred. Id., 427; *State* v. *Mooney*, supra.

In order for uncharged misconduct evidence to have any probative value with regard to the issue of intent, the state must make a preliminary showing sufficient to support a jury finding that it was the defendant who committed the misconduct. *State* v. *Wilson*, 199 Conn. 417, 449, 513 A.2d 620 (1986). In this case, the state has made a sufficient showing. In regard to the evidence of unaccounted for drug losses, the state introduced evidence that the defendant was the only nurse on duty at the time and place when each drug loss occurred during the two month period prior to July 15, 1988. In regard to the nursing home items obtained from the plastic bag, the state made four showings that linked the defendant to the items or the bag. First, the state produced evidence indicating that the items in the bag were taken from the nursing homes during a time period when the defendant had worked at the nursing homes. Second, testimony by the director of the hospital's pharmacy indicated that several items in the bag had come from the hospital where the defendant was an employee and at a time when the defendant had access to the items. Third, the bag contained a prescription container bearing the name of the defendant's

daughter. Finally, the state produced a written statement of the defendant's husband, a defendant in a related matter, Bruce Graham, in which Graham stated that he had removed a plastic bag containing pharmaceutical items from his and the defendant's house, and had thrown the bag into the dumpster. On the basis of these showings, we conclude that the state has made preliminary showings sufficient to support a finding that it was the defendant who committed both sets of misconduct.

The trial court concluded that both sets of uncharged misconduct evidence were admissible because they tended to establish intent. "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue." *State* v. *Sauris,* 227 Conn. 389, 406, 631 A.2d 238 (1993). Evidence is relevant "if it tends to support the conclusion [for which it is offered], even to a slight degree. . . ." (Citations omitted; internal quotation marks omitted.) Id.

With regard to the evidence of drug losses, we conclude that the evidence had a tendency to prove that the defendant intended to deprive the hospital of narcotics or to appropriate drugs to herself. In regard to the nursing home items, the trial court could have reasonably concluded that the evidence implicated the defendant in the unlawful taking of the property of another, and that this was relevant to the issue of whether the defendant had the intent to commit the charged crimes. See *State* v. *Baldwin,* 224 Conn. 347, 355, 618 A.2d 513 (1993) (evidence that defendant had sold drugs in the past is relevant to nature of his possession of drugs at time of charged crime). The trial court could reasonably have concluded further that the probative value of the two sets of evidence outweighed their prejudice to the defendant. Therefore, the trial court did not abuse its discretion in admitting the evidence as uncharged misconduct evidence.

## II

The defendant claims that the trial court's jury instructions regarding consciousness of guilt violated the defendant's constitutional rights under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution by diluting the state's burden of proof and by burdening the defendant's right to testify. The defendant challenges the following portion of the trial court's instructions to the jury: " '[C]onsciousness of guilt' may be circumstantial evidence of guilt. . . . If . . . you find [the] defendant gave false testimony at trial, this may be evidence of consciousness of guilt."[3] At trial, the defendant did not object to this instruction. She seeks to prevail, however, under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of a constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate

---

[3] The trial court's jury instruction regarding consciousness of guilt states in pertinent part: "There is an area of law called consciousness of guilt. Whenever a person is on trial for a criminal offense, it is proper to show that person's conduct as well as any declarations made by him or her subsequent to the alleged criminal offense which may facially have been influenced by that criminal act. State of mind which is characterized as 'consciousness of guilt' may be circumstantial evidence of guilt. . . . If [the] defendant made statements and you find that those statements are false, or if you find [the] defendant gave false testimony at trial, this may be evidence of consciousness of guilt. It is up to you as judges of the facts to decide whether certain acts, statements or conduct of the defendant . . . reflect consciousness of guilt and to consider such in your deliberations in conformity with the law."

harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992); see also *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). The first two conditions of *Golding* are met here because there is an adequate record for review and the right not to be convicted except upon proof beyond a reasonable doubt is a constitutional right. *Summerville* v. *Warden,* 29 Conn. App. 162, 178 n.4, 614 A.2d 842, cert. granted on other grounds, 224 Conn. 918, 617 A.2d 172, 173 (1992). Upon a review of the merits, however, we conclude that no constitutional violation exists that clearly deprived the defendant of a fair trial.

Although a jury may reject a defendant's testimony, a jury cannot infer from its disbelief of the testimony that any of the facts denied by the defendant were true. *State* v. *Coleman,* 14 Conn. App. 657, 671–72, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988). Thus, a trial court cannot instruct a jury that it may use its disbelief of a defendant's testimony as proof of a fact necessary to a determination of guilt. *State* v. *Murdick,* 23 Conn. App. 692, 702, 583 A.2d 1318, cert. denied, 217 Conn. 809, 585 A.2d 1233 (1991); *State* v. *Coleman,* supra, 673. Such an instruction violates a defendant's constitutional rights by diluting the state's burden of proof and by burdening the defendant's right to testify. *State* v. *Murdick,* supra; *State* v. *Coleman,* supra, 670–76.

A trial court may, however, instruct a jury to consider a defendant's false testimony at trial as evidence of consciousness of guilt. *State* v. *Murdick,* supra, 703; *State* v. *Coleman,* supra, 676–77, and cases cited therein; see *State* v. *Brown,* 199 Conn. 14, 26–27, 505

A.2d 690 (1986). A jury may also consider consciousness of guilt in determining whether the defendant is guilty. *State* v. *Brown,* supra, 27. In this case, the trial court did not instruct the jury that it could base its finding of guilt on its disbelief of the defendant's testimony. Rather, the trial court properly instructed the jury that it could consider false testimony as evidence of consciousness of guilt, and that, in turn, consciousness of guilt may be evidence of guilt. Since the challenged instruction did not deprive the defendant of due process under either the state or federal constitution; id.; and since consciousness of guilt may be considered along with other evidence in determining guilt; *United States* v. *Morales,* 577 F.2d 769, 772–73 (2d Cir. 1978); we conclude that the defendant has failed to demonstrate that a constitutional violation exists that clearly deprived her of a fair trial.

## III

The defendant also claims that the trial court's jury instructions regarding good character evidence violated her constitutional rights under the fourteenth amendment to the federal constitution and article first, § 8, as amended, of the Connecticut constitution, by diluting the state's burden of proof and by burdening the principle of guilt beyond a reasonable doubt. The defendant challenges the following portion of the trial court's instructions to the jury: "Evidence of good character is not of itself sufficient to raise a reasonable doubt of the guilt of the defendant. . . . Sufficient evidence in order to raise a reasonable doubt of guilt must be believed by you."[4] At trial, the defendant did not

---

[4] The trial court's jury instruction regarding good character evidence states in pertinent part: "Evidence of good character is not of itself sufficient to raise a reasonable doubt of the guilt of the defendant. . . . Sufficient evidence in order to raise a reasonable doubt of guilt must be believed by you. This character evidence *when considered with all the other evidence* in the case may be sufficient to raise a reasonable doubt in your mind as

object to this instruction. She seeks to prevail, however, under *Golding* or plain error review. Although the first two conditions of *Golding* are met because there is an adequate record for review and because the defendant's claim is of constitutional magnitude; *Michelson* v. *United States,* 335 U.S. 469, 476, 69 S. Ct. 213, 93 L. Ed. 2d 168 (1948); we conclude that a review of the merits of the defendant's claim shows that no constitutional violation exists that clearly deprived the defendant of a fair trial.

Since a person of previous good character may commit a crime, proof of good character is not a defense to a criminal charge. *State* v. *McGuire,* 84 Conn. 470, 485, 80 A. 761 (1911). Good character, if proven, is a circumstance for the jury to consider along with the other facts established in the case. *State* v. *McGuire,* supra, 486; see *State* v. *Alderman,* 83 Conn. 597, 602, 78 A. 331 (1910). If the facts establish beyond a reasonable doubt that the accused committed the charged crime, then evidence of good character is "no longer of any weight." *State* v. *McGuire,* supra. Thus, a trial court may instruct a jury that where it determines after considering all the evidence, including character evidence, that the facts establish guilt beyond a reasonable doubt, evidence of good character will not by itself warrant an acquittal. Id.; *State* v. *Alderman,* supra, 602–603; see *State* v. *Greenberg,* 92 Conn. 657, 663, 103 A. 897 (1918).

"In reviewing a constitutionally based challenge to the court's instruction to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction." *State* v. *Adams,* 225 Conn. 270,

to her guilt. If there is other evidence in the case, implicating the defendant in the crime for which she is being tried, evidence of good character is not in and of itself sufficient to raise a reasonable doubt." (Emphasis added.)

290, 623 A.2d 42 (1993). In this case, it is not reasonably possible that the trial court's instructions regarding character evidence misled the jury because the instructions, taken as a whole, were consistent with established principles. The trial court instructed the jury to consider character evidence along with all of the other evidence in determining whether a reasonable doubt existed as to the defendant's guilt. The court also informed the jury that if other evidence implicated the defendant in the charged crime, good character evidence in and of itself would not be sufficient to raise a reasonable doubt. The instructions as a whole were proper and the defendant was not constitutionally deprived of a right due her or of a fair trial.

## IV

We next consider whether the evidence presented at trial was sufficient to sustain the defendant's conviction of larceny in the sixth degree for actions allegedly occurring at the hospital between September, 1987, and August, 1988. The defendant contends that the state failed to present sufficient evidence for the jury to find that pharmaceutical items were wrongfully taken from the hospital during the alleged time frame. We disagree.

The two part test for evaluating the sufficiency of the evidence in a jury trial is well established. First, the reviewing court construes the evidence presented at trial in a light most favorable to sustaining the verdict. *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993); *State* v. *Gray,* 221 Conn. 713, 719–20, 607 A.2d 391, cert. denied, U.S. , 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Allen,* 216 Conn. 367, 380, 579 A.2d 1066 (1990). The reviewing court then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from the facts, that the cumu-

lative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Baldwin,* supra; *State* v. *Gray,* supra, 720; *State* v. *Allen,* supra.

In this case, Rubino, the director of the hospital's pharmacy, testified as a state's witness that he had examined the items in the plastic bag found in the dumpster on August 5, 1988. Rubino stated that he could positively identify some items in the bag as having come from the hospital, and that among those positively identified were items with hospital packaging from 1988. Rubino further stated that the items with 1988 labeling had a value of less than $250. On the basis of this testimony, a jury could have reasonably found that the defendant wrongfully took pharmaceutical items, valued at less than $250, from the hospital in 1988. Thus, the jury reasonably could have found that the evidence was sufficient to establish guilt beyond a reasonable doubt for larceny in the sixth degree.

V

The defendant also claims that the trial court improperly imposed a condition of probation that requires her "to provide for the proper care and cleanliness of the children and the home." At oral argument, the defendant also claimed that the court improperly imposed a condition ordering her not to allow "any child of hers under thirteen (13) years of age to be left at home unattended without an adult." The defendant contends that the conditions are not reasonably related to the purposes of probation and violate her constitutional rights to due process of law. The defendant properly objected to the conditions at sentencing.[5]

---

[5] Prior to sentencing, defense counsel took exception to certain conditions recommended by the state, including the conditions regarding the care and cleanliness of the children and home. The defendant herself spoke at the sentencing hearing and argued against the conditions.

When sentencing a defendant to probation, a trial court has broad discretion to impose conditions. *State* v. *Smith,* 207 Conn. 152, 167, 540 A.2d 679 (1988); *State* v. *Golding,* 14 Conn. App. 272, 282, 541 A.2d 509 (1988), rev'd on other grounds, 213 Conn. 233, 567 A.2d 823 (1989); see General Statutes § 53a-30.[6] Nevertheless, this discretion is not unlimited, as statutory and constitutional constraints must be observed. *State* v. *Smith,* supra. General Statutes § 53a-30 enumerates the conditions that the trial court may impose on a defendant. The only conditions that could be construed as relating to either of the challenged conditions are enumerated in § 53a-30 (a) (11) and § 53a-30 (a) (3). On appeal, we review whether the trial court abused its statutory discretion in imposing a condition of probation. See *State* v. *Smith,* supra.

---

[6] General Statutes § 53a-30 provides in pertinent part: "(a) When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (1) Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip him for suitable employment; (2) undergo medical or psychiatric treatment and remain in a specified institution, when required for that purpose; (3) support his dependents and meet other family obligations; (4) make restitution of the fruits of his offense or make restitution, in an amount he can afford to pay or provide in a suitable manner, for the loss or damage caused thereby and the court may fix the amount thereof and the manner of performance; (5) if a minor, (A) reside with his parents or in a suitable foster home, (B) attend school, and (C) contribute to his own support in any home or foster home; (6) post a bond or other security for the performance of any or all conditions imposed; (7) refrain from violating any criminal law of the United States, this state or any other state; (8) if convicted of a misdemeanor or a felony, other than a capital felony, a class A felony or a violation of section 21a-278, 21a-278a, 53a-55, 53a-56, 53a-56b, 53a-57, 53a-58 or 53a-70b or any offense for which there is a mandatory minimum sentence which may not be suspended or reduced by the court, and any sentence of imprisonment is suspended, participate in an alternate incarceration program; (9) reside in a residential community center or halfway house approved by the commissioner of correction, and contribute to the cost incident to such residence; (10) participate in a program of community service labor in accordance with section 53a-39c; (11) satisfy any other conditions reasonably related to his rehabilitation. . . ."

Probation conditions serve two primary purposes. "[They] are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large." (Internal quotation marks omitted.) Id., 165. Because probation is part of a criminal sentence, probation conditions often restrict the liberty rights of a probationer by imposing "serious restraints on a probationer's life-style, associations, movements and activities." *State* v. *Reid,* 204 Conn. 52, 55, 526 A.2d 528 (1987); see *State* v. *Smith,* supra, 164–65. Nevertheless, a condition of probation may diminish a probationer's liberty rights "only to the extent necessary for his reformation and rehabilitation." *State* v. *Smith,* supra, 166.

We conclude that the conditions regarding cleanliness of the home and care and cleanliness of the children do not serve to rehabilitate or to reform the defendant because they do not relate to the defendant's behavior involved in her convictions for larceny and drug crimes. Furthermore, the conditions are not reasonably related to the public protection purpose of probation. On the basis of the convictions of the defendant, the defendant is potentially harmful to the public as a possessor of drugs and as a thief. The public cannot be harmed because of alleged housekeeping deficiencies. Nor does the public safety and welfare hinge on whether a child is allowed to remain at home unattended.

The judgments are affirmed; the cases are remanded to the trial court with direction to delete the conditions of probation stating that the "defendant is to provide for the proper care and cleanliness of the children and the home" and that the defendant is not to allow "any child of hers under thirteen (13) years of age to be left at home unattended without an adult."

In this opinion the other judges concurred.