THE STATE OF CONNECTICUT *vs.* GERSHON MARX.

Second Judicial District, Norwich, April Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The requirement of General Statutes, § 1508, that no person shall be convicted of a capital offense without the testimony of at least two or more witnesses, or that which is equivalent thereto, is complied with if there are two or more witnesses, each testifying to different parts of the same transaction, or to different circumstances, tending directly to show the guilt of the accused, although there may not be two witnesses to any one fact or circumstance.

Having once called the attention of the jury to the statute and explained to them its provisions, the trial judge is not bound to refer to it again in other parts of his charge.

Where evidence in a trial for murder has no possible bearing upon excusable or justifiable homicide, it is not error for the trial judge to so instruct the jury.

The charge in the present case reviewed and *held* not to have been misleading in respect to the presumption of malice arising from an unlawful homicide.

Even in a capital case the accused, either personally or by his counsel, may admit some facts which, though necessary for the State to establish, may be consistent with his innocence and the grounds of his defense.

In the present case the accused offered no evidence in contradiction of that introduced by the State to prove that a murder had been committed by some one, but based his defense upon the ground that he did not participate in the crime and had no knowledge of it; and his counsel in his argument to the jury admitted that the decedent had been murdered, but claimed that the accused had nothing to do with the crime. *Held :—*

1. That under the circumstances this admission was a proper one and was in the interest of the accused.

2. That the trial judge committed no error in calling the attention of the jury to this admission in his charge.

3. That the intimation of the trial judge—that such admission was in his opinion justified by the evidence—if erroneous, was harmless.

It is the duty of the trial judge, in submitting a case to the jury, to call their attention to the evidence in its relation to the material questions they are called upon to decide; and if this duty is to be performed intelligently and fairly, it is evident the charge must to some extent uncover the weakness of a weak case, the difficulties of a difficult case, and the strength of a strong case. If, however,

the comments upon the evidence in a criminal case do not amount to a direction or advice as to how the jury shall find their verdict, the charge will not be held erroneous merely because it is possible the jury may have received an impression that the trial judge believed the accused guilty.

Argued April 26th—decided May 12th, 1905.

INDICTMENT for murder in the first degree, brought to the Superior Court in New London County and tried to the jury before *Case, J.;* verdict and judgment of guilty, and appeal by the accused for alleged errors in the charge of the court. *No error.*

*Donald G. Perkins* and *Clayton B. Smith,* for the appellant (the accused).

*Solomon Lucus,* State's Attorney, for the appellee (the State).

HAMERSLEY, J. Upon the trial the accused presented to the court, in writing, eighteen requests to charge. These requests covered definitions of reasonable doubt, and instructions in respect to circumstantial evidence, with special reference to the testimony which had been produced and its sufficiency to warrant the conviction of murder in the first degree; instructions upon the weight of evidence which had been given; the probative force of flight in view of the particular testimony given; the weight to be given the evidence pointing to an unknown guilty party; the weighing of the testimony given by those interested in detection and conviction; the weighing of presumptions arising from the subsequent conduct of the accused; the weight to be given the testimony of the accused; the weight to be given to the testimony of a witness believed to have made a wilfully false statement as to any particular fact; the effect of the presumption of innocence which prevails throughout the trial, and the necessity of each juror being convinced beyond a reasonable doubt.

The subject-matter of these requests is sufficiently and accurately covered by the charge of the court.

No error is assigned for refusing to charge in the language of any request except the 9th, 11th and 13th requests, which relate to instructions for weighing the testimony of witnesses who had been interested in the detection of the accused; for weighing the presumptions arising from the subsequent conduct of the accused, and for weighing the testimony of the accused himself.

The instructions as given by the court in compliance with these requests are too plainly adequate and correct to justify discussion, and the errors assigned, in the refusal of the court to charge in the language of the requests, are not pursued in the brief for the accused.

The other reasons of appeal assign error in certain quotations from the charge of the court as given. Section 1508 of the General Statutes is as follows: "No person shall be convicted of any crime, punishable by death, without the testimony of at least two witnesses, or that which is equivalent thereto." The court having instructed the jury as to the law of criminal homicide, the essentials of the crime of manslaughter, the essentials of the crime of murder, and the additional elements prescribed by statute which distinguish any particular murder as murder in the first degree, added: "Your attention should be properly called at this point, also, to a provision of our law which directs that 'no person shall be convicted of any crime, punishable by death, without the testimony of at least two witnesses, or that which is equivalent thereto.' The only crime with which you are concerned, to which this provision applies, is murder in the first degree, since that is the only crime within the scope of your deliberations which is punishable by death. Now you will observe that that statute does not require the testimony of two witnesses. It is expressly provided that the equivalent of the testimony of two witnesses shall satisfy the requirements of the law; and you, gentlemen, are the sole judges, under all the circumstances of any given case, of what amount of testimony equals, or is the equivalent of, the testimony of two witnesses. Nor does the statute require that the testimony of two witnesses, or its equivalent,

is necessary to every important fact. If there is testimony which amounts to or is the equivalent of that of two or more witnesses, each testifying to different material parts of the transaction, and both in their natural and orderly connection directly tending to show the guilt of the accused, the requirements of the statute are satisfied. And you, I need hardly remind you again, are to determine upon all the circumstances what amount and kind of testimony in any given case reaches this standard."

The accused claims that the court erred in neglecting to define to the jury the meaning of the phrase, " or that which is equivalent thereto," and in not again calling their attention to the statute in the brief summary, at the close of the charge, of the conditions requisite to each of the four verdicts it was within the power of the jury to render; and these alleged errors are assigned in the fourth and ninth reasons of appeal.

Section 1508 was first adopted in 1672, in the following language: " It is ordered by this court; That no person for any fact committed shall be put to death without the testimony of two or three witnesses, or that which is equivalent thereunto." Rev. 1672, p. 69. On page 9, the offenses for which a person may be put to death (fifteen in number) are prescribed. Most of these offenses were established in 1642, and were based upon the Mosaic Code, the passage of scripture requiring the punishment of death being cited with each offense. 1 Col. Rec. 77. The punishment of wilful murder by death is based upon Numbers, Chap. 35, v. 30, 31: " Whoso killeth any person, the murderer shall be put to death by the mouth of witnesses: but one witness shall not testify against any person to cause him to die. Moreover ye shall take no satisfaction for the life of a murderer, who is guilty of death: but he shall be surely put to death." None of the laws were printed till 1672, and when they were revised for publication the scriptural rule, that one witness shall not testify against any person to cause him to die, was formally adopted as applicable to all capital offenses, in the language above cited, which is evidently based upon Deuter-

onomy, Chap. 17, v. 6: "At the mouth of two witnesses, or three witnesses, shall he that is worthy of death be put to death; but at the mouth of one witness he shall not be put to death." It is to be remembered that at the time of the adoption of this statute judicial trials included various kinds of evidence other than oral and direct testimony, which might be equivalent or equally efficacious to prevent the putting any one to death at the mouth of a single witness. The Act of 1672, with some changes in phraseology made in 1821 and about 1835 which do not alter its meaning, has remained on our statute book until the present day.

It is the duty of the court to call the attention of the jury to the statute and instruct them that the case must be proved by the testimony of at least two witnesses or by evidence which is equivalent thereto, and that the requirement of two witnesses is complied with if there are two or more witnesses, each testifying to different parts of the same transaction, or to different circumstances concerning the case, tending directly to show the guilt of the party accused, although there may not be two witnesses to any one fact or circumstance. Ordinarily this is the whole duty of the court, and more extended comment is not necessary nor likely to be profitable. Having thus called the attention of the jury to the statute, the court is not bound to again refer to it in other parts of the charge. Swift's Ev., p. 142; *State* v. *Smith,* 49 Conn. 376, 385; *State* v. *Kelly,* 77 id. 266, 274. The accused has no reason to complain of the action of the court referred to in the fourth and ninth reasons of appeal.

The court in the opening part of the charge states to the jury that the accused is on trial under an indictment charging him with murder in the first degree, and therefore their deliberations would involve the law of homicide, that is, the law and its bearing upon and relation to the killing of one human creature by another, and proceeds as follows: "More precisely, gentlemen, you are concerned with that species of homicide which the law defines to be unlawful, or criminal, for no possible aspect of the case presented upon the evidence makes it necessary or profitable for you to consider that class

of homicide which the law regards as excusable or justifiable."

There is no error in this. It does not appear that any possible aspect of the case as it was presented to the jury upon the evidence required a consideration of the law which defines an excusable or justifiable homicide. No claim of this kind was made upon the trial. Under these circumstances instructions upon the law defining excusable or justifiable homicide could serve no useful purpose, and the court properly so stated to the jury. *State* v. *Smith*, 49 Conn. 376, 388.

The court correctly charged the jury as to the distinction between murder and manslaughter, and the meaning of that malice which is the characteristic mark of all murder as distinguished from manslaughter, concluding as follows : " The matter has been summarized in these words : ' Malice includes all those states of the mind in which a homicide is committed without legal justification, extenuation or excuse.' And as a final word on the subject, I may say to you that where an unlawful homicide is shown to have been committed, and its attending circumstances disclose nothing to mitigate, extenuate or excuse the act, malice in the slayer will be presumed."

The third reason of appeal claims error in the latter part of the passage quoted, mainly on the alleged ground that the jury must have understood from this portion of the charge that actual, express malice will be presumed from an unlawful killing, sufficient to support the conviction of murder in the first degree. There is no foundation for this claim. Immediately following the passage quoted, the court plainly tells the jury that thus far the discussion applies only to murder as distinguished from manslaughter, and proceeds to instruct them as to that kind of murder which our statute defines as murder in the first degree ; telling them, in the plainest terms and with adequate fullness, that to constitute murder in the first degree the killing must be intentional, must be deliberate and premeditated, and that no killing can be murder in the first degree unless the act of

killing is preceded by a wilful, deliberate, premeditated and specific intent to kill. Having correctly and adequately charged the jury as to the law of homicide, the court directs their attention to the precise case with which they are to deal, and tells them that to justify a conviction the State must establish, by that degree of proof already defined, all the substantial allegations of the indictment. These allegations are, that Rodecki was unlawfully slain, that he was slain substantially at the time and in the manner set forth, that he was slain by the accused, and that he was slain by the accused wilfully, deliberately and premeditatedly. In referring to these allegations, the court said that the first of these is the charge that Rodecki was unlawfully slain, and added : " It is not disputed that his dead body was found on the 8th of April last, and its condition and the marks of violence upon it point clearly to the conclusion that he was by some person or persons unlawfully slain, and in a manner substantially as laid in the indictment. In fact, no question is made here that a criminal homicide was committed by some one, when Rodecki was killed ; and the circumstances, and the absence of any explanation of them as revealed by the testimony, clearly justify you in fixing the crime committed, as murder. Indeed, gentlemen, in my opinion it would be difficult to justify any conclusion of yours which determines that any crime short of murder is involved here (but you will be careful to understand that I am giving you my opinion only, and not seeking to direct or control you as to your conclusion of fact upon this or any other part of the case)." After referring briefly to the allegations as to the time and manner of killing, the court says : " Your vital inquiries here, therefore, are two : whether the indictment names the slayer, and if it does, what was the crime which the slayer committed. So, then, bearing clearly in mind the principles of law which I have stated to you, you are brought to the claims which the State makes here, and to the answer or defense of the accused." Then follows a full, clear, and fair résumé of the testimony introduced and claims made by the State, and of the testimony introduced

and claims made by the defense, and the charge concludes as follows : " You will examine with conscientious care all the evidence that has been submitted here. If you shall then be satisfied—remembering the presumption of innocence—to the exclusion of all reasonable doubt, that the accused in the manner and form as presented in the indictment killed Pawel Rodecki, with malice aforethought as I have explained that term to you, and committed the crime wilfully, deliberately and with premeditation, as I have explained those terms to you, then your verdict must be guilty of murder in the first degree. If you entertain a reasonable doubt as to the existence of wilfulness, deliberation and premeditation, but are satisfied beyond all reasonable doubt that the prisoner slew Pawel Rodecki in other respects as presented on the indictment—that is, if he committed the crime with malice aforethought, without wilfulness, deliberation and premeditation—then your verdict must be guilty of murder in the second degree. And since it is within the scope of your right here, if in your judgment the evidence should call for such a conclusion, I may say to you that if you are satisfied to the exclusion of all reasonable doubt that the accused killed Pawel Rodecki, but entertain a reasonable doubt as to the existence of malice, or malice aforethought, as an element of the crime, in such a situation your verdict should be guilty of manslaughter. If, finally, upon the evidence presented to you, all carefully sifted and weighed, you entertain any reasonable doubt as to whether the prisoner is the slayer of Pawel Rodecki, then of course you must give him the benefit of that doubt by a verdict of not guilty."

By the fifth reason of appeal the accused assigns error in that quotation from the charge in which the court says : " It is not disputed that his dead body was found," etc., and claims that the passage is erroneous because the court states that it is admitted that a murder of some kind was committed by some one when Rodecki was killed, and expresses an opinion that the evidence produced would justify the jury in reaching a similar conclusion. Reading the passage in con-

nection with its context and the facts appearing in the finding, we think it is not erroneous. It appears from the finding that the following facts were testified to by witnesses and admitted by the accused, who testified in his own behalf: Marx occupied and worked a farm; Rodecki entered his employ as a farm laborer in the fall of 1903, for the term of six months, which expired about the middle of the following March, and his wages were not payable until the expiration of his term; during the term of service Rodecki was an inmate of Marx's house, occupying a sleeping room with him, Marx sleeping on a bed and Rodecki on a mattress which lay upon the floor; Rodecki disappeared about the twentieth of March; before his disappearance his wages, amounting to $53, were due and payable; on April 8th Rodecki's dead body was found under a pile of stones at the bottom of an abandoned cellar on Marx's farm, close to, but screened from the highway and a little more than a hundred feet from Marx's house; Rodecki had been killed by a blow from some blunt instrument which smashed in his skull, and his body had been cut into four pieces and each piece enclosed in a rough sacking; immediately after the discovery of the body Marx fled and was finally arrested in New York. It further appears that the testimony of several witnesses tended to prove the following facts: Rodecki had been killed while lying on his mattress in Marx's sleeping room; criminating conduct and statements of Marx before, at the time of, and subsequent to, the discovery of Rodecki's dead body and during his flight and subsequent to his arrest; some of these facts were admitted in part and explained, and others wholly denied by Marx in his testimony. It further appears that counsel for Marx in arguing the case to the jury admitted, and shaped the defendant's defense upon the admission, that Rodecki was murdered, contending only that the defendant had nothing to do with and no knowledge of the commission of the crime.

It is true that in the trial of capital offenses the court will and should exercise care and discretion in respect to admissions made by the accused or by his counsel in open court,

and that every conviction should be supported by some evidence produced in court, and so even a plea of guilty will not ordinarily be accepted. But it is not true that an accused cannot, either by himself or his counsel, in his own interest, admit some facts which, though necessary for the State to establish, may be consistent with his innocence and the defense he maintains. Subject to the reasonable discretion of the court in the protection of the accused against improvidence or mistake, admissions during the trial by the accused or his counsel as to the genuineness of a document; admissions as to the testimony a witness not produced would give if present, or the fact his testimony would establish, voluntarily made for the purpose of preventing a postponement of the trial; and admissions in the interest of the accused limiting the issue to the material facts upon which alone his successful defense depends, have long been permitted under our practice, and we think their lawfulness and propriety rest upon sound reason. *Oscanyan* v. *Arms Co.*, 103 U. S. 261, 263; *Commonwealth* v. *Desmond*, 5 Gray (Mass.) 80; *State* v. *Mortensen*, 26 Utah, 312, 323, 73 Pac. Rep. 562, 565; *State* v. *Fooks*, 65 Iowa, 452; *Rosenbaum* v. *State*, 33 Ala. 354, 362; *Commonwealth* v. *McMurray*, 198 Pa. St. 51, 59. See discussion in 4 Wigm. on Evidence, § 2588 *et seq.*

The admission in this case did not take the place of testimony. The State by its own witnesses, and by the testimony of the accused, had established the killing of Rodecki by some one, in a manner denoting the commission of a murder of some kind. This fact was consistent with his innocence as claimed by the accused, and it was plainly his interest to withdraw the attention of the jury as far as possible from the details of the murder committed, and concentrate it upon his single contention that he did not do the killing. For this purpose the admission of some kind of murder, committed by some one, was properly made, and it was proper for the court in the charge to give the accused the benefit of this admission and limitation of issue; and the intimation that the admission was justified by the evidence, was harm-

less, even if it were error for the court to intimate any opinion in respect to the weight of evidence.

The claim, however, of the accused urged under this and other reasons of appeal, that the charge was erroneous because the instructions given might give the jury an impression that the court believed the accused guilty, is not well founded. In jury trials it is the province of the court to decide questions of law, and of the jury to decide questions of fact. In criminal as in civil cases, it is the duty of the jury to accept the law as declared to them by the court, and of the court to submit all questions of fact to the jury, with such observations on the evidence for their information as it may think proper, without any direction how they shall find the facts. In criminal cases, however, the jury must return a general verdict upon the law and the facts thus submitted to their consideration, and in making such submission the court must not give them any direction how to find their verdict. And in criminal cases, especially those involving the highest crimes, greater caution is used to avoid any form of comment on the evidence that may amount to a direction or advice as to how the jury shall decide the matter to which the evidence relates. *State* v. *Rome*, 64 Conn. 329, 337; *State* v. *Fetterer*, 65 id. 287, 289; *State* v. *Gannon*, 75 id. 206, 218; General Statutes, §§ 753, 1516. It is the duty of the trial judge, in submitting the law and facts to the consideration of a jury, to refer to the testimony so far as may be necessary to assist the jury to a clear apprehension of the relation of the testimony, whose credibility they must determine, to the material facts they must decide, and to clearly state the law which they must apply to the facts thus found in reaching the general verdict they must render. It is evident that whenever this duty is well done, the charge must to some extent uncover the weakness of a weak case, the difficulties of a difficult case, or the strength of a strong case. In the present case, it is evident that the active cause of the criticism of the charge mainly urged is, not that the trial judge failed to submit to the jury the law and the facts without any di-

rection how they should find their verdict, but that he performed this duty sensibly, intelligently and fairly.

The passages in the charge relating to the inferences the jury might draw from the flight of the accused and the credit they should give his testimony, complained of in the sixth and seventh reasons of appeal, are plainly correct.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.