## THE STATE OF CONNECTICUT *vs.* DIRATTO CABAUDO ALIAS DOMINICK DIADATO.

Second Judicial District, Norwich, April Term, 1910.

HALL, C. J., PRENTICE, THAYER, RORABACK and ROBINSON, Js.

It is well established in this State, that in submitting a case, civil or criminal, to the jury, the court may, at its discretion, call their attention to the evidence, or lack of evidence, upon any point in issue, and comment upon the weight of the evidence, provided it does not direct or advise the jury how to determine the matter.

Upon a trial for murder in the first degree the accused testified that he did not intend to shoot the decedent but only to use his pistol to threaten and scare him and cause him to desist from his assault; and that while he had hold of his revolver in his pocket for that purpose, and was endeavoring to free himself his hand was wrenched or pulled out, and in the struggle the revolver was accidentally discharged. He also claimed—with reference to certain statements which the State's witnesses testified he made immediately after the shooting—that his mind had become affected by drink to such an extent that he did not know what he was talking about. The trial judge, after telling the jury that the accused could not be held guilty of any crime under the indictment, if they found the pistol was accidentally discharged, as he contended, remarked that this testimony of the accused "would exclude any suggestion of self-defense," although if there was any other testimony in the case tending to show that the shot was in fact fired in self-defense, the jury should consider it carefully in the light of the law of self-defense as previously stated to them. *Held* that the comment made was clearly within the discretion of the trial judge, and afforded the accused no just cause of complaint.

In another portion of his charge the trial judge said that the death of the decedent in the manner and by the means substantially set forth in the indictment, did not appear to be contested. *Held* that in view of the context it was a perversion or misconstruction of this statement to treat it as an intimation that the accused did not contest his responsibility for the death of the decedent and was therefore guilty of murder in the first degree.

A statement, explanatory in its nature, which, in so far as it involves any expression at all of the court's opinion, is favorable to the accused, cannot be urged by him as error.

The appellant also complained because the trial court did not call the

The State *v.* Cabaudo.

attention of the jury to the fact that there was testimony that he, the accused, was so far under the influence of liquor that he did not know what he was talking about. *Held* that the charge on this subject was adequate and fair; and that if it indicated the existence of any opinion of the trial judge upon the question of fact, it was so carefully guarded that the jury could not have been improperly influenced by it.

Sentences, extracts, or detached parts of a charge, when claimed to be erroneous, are to be read in connection with their context and with the instructions as a whole.

It is reprehensible for counsel to go outside the record in addressing the jury; but a new trial will not ordinarily be granted for that reason, especially if no objection was made to the alleged improper remark in the court below.

Argued April 26th—decided May 4th, 1910.

·INDICTMENT for murder in the first degree, brought to the Superior Court in New London County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment of guilty, and appeal by the accused. *No error.*

*Clayton B. Smith* and *Richard P. Freeman,* for the appellant (the accused).

*Hadlai A. Hull,* State's Attorney, for the appellee (the State) was stopped by the court.

RORABACK, J. The accused, Cabaudo, otherwise known as Diadato, a native of Italy, has lived in the city of New London about six years. Alphonzo Barbuto, also an Italian, had lived in the same city about three years before his death, which occurred on the 27th of May, 1909.

The State offered evidence tending to prove, among other facts, the following: That the accused, for several months before the shooting, entertained feelings of extreme hatred against Barbuto, occasioned by a fight between them in 1908, and the treatment Diadato received from a woman in March, 1909, for which he

claimed that the deceased was responsible; that Diadato on several different occasions had threatened to injure and kill Barbuto; that on the evening of the shooting the accused saw the deceased in the locality of the saloon and grocery store of Antonio Grippo, in the city of New London, and immediately thereafter went to his dwelling-place, near by, and obtained a revolver for the purpose of killing Barbuto; that the accused returned and found Barbuto in Grippo's saloon, when a quarrel was provoked by Diadato, in which he deliberately fired the shot which caused Barbuto's death; that Grippo, the keeper of the saloon, then seized Diadato and wrenched the pistol from his hands, and said to him, "See what you have done in my place, you have shot a man," and that Diadato replied, "I don't care. I wanted to kill him. He is dead and I die, too."

The defendant, upon the trial, offered evidence to prove that Barbuto had assaulted and beaten him on several occasions, and had repeatedly threatened to do him bodily harm; that ever since he came to this country he owned the revolver with which the shooting was done; that on the evening when the shooting occurred Barbuto grabbed him by the neck and was trying to drag him into the back-yard, when, believing that Barbuto was going to do him great bodily harm, he put his hand into his pocket and took hold of his revolver, intending to withdraw the same and to threaten Barbuto with its use, to protect himself from further bodily harm, when his pistol was discharged accidentally; that the mind of the defendant at and for a great many hours before the shooting was greatly affected by the use of intoxicating liquor, so much so that he was unable to know what he was talking about.

The trial court in its charge to the jury used this language: "The testimony of the accused tends to show

that the firing of the pistol was accidental; that he put his hand into his trousers pocket, where his pistol was, for the purpose of frightening Barbuto; and that by some one his hand was pulled out bringing the pistol, which was in some way discharged without any intent to fire it on his part. You will consider his statement in relation to that matter in connection with the testimony of Antonio Grippo and others. If the pistol was thus discharged by accident, the accused was not guilty of any crime of which he can be found guilty under this indictment. This testimony of the accused would exclude any suggestion of self-defense; for, if he did not intentionally fire the pistol, he did not act in self-defense in firing it. Still, if there is testimony given in the case by other witnesses which tends to show that the shot was in fact fired in self-defense, you should consider it carefully and endeavor to apply the general statement of the law of self-defense, as I have endeavored to state it."

The defendant has no reason to complain of the charge thus given. The trial court had previously correctly explained the law of self-defense.

It has been established by repeated decisions in this State that a court, in submitting a case to the jury, may, at its discretion, call the attention of the·jury to the evidence, or lack of evidence, bearing upon any point in issue in the case, and may comment upon the weight of the evidence, so long as it does not direct or advise the jury how to decide the matter. This portion of the charge of the court below was clearly within the rule. *State* v. *Duffy*, 57 Conn. 525, 529, 18 Atl. 791; *State* v. *Rome*, 64 Conn. 329, 337, 30 Atl. 57; *State* v. *Fetterer*, 65 Conn. 287, 289, 32 Atl. 394.

The defendant claims that the court erred in instructing the jury that "the death of Alphonzo Barbuto by the means and in the manner substantially set

forth in the indictment, does not appear to be contested."

The indictment alleged in substance that on the 27th day of May, 1909, Alphonzo Barbuto was instantly killed by the accused with a revolver which the accused then and there had and held in his hand. Diadato's own testimony, and all we know of him from the evidence of the witnesses, point unmistakably to the truth of these averments. There is not a word or fact in the case to the contrary. There was no dispute about the manner in which Barbuto was killed. The trial court followed the statements complained of by referring to the testimony of a physician showing how the injury was inflicted, and where the deceased was injured. The jury were then told that they should acquit the accused if they found that the shooting was accidental, or in self-defense. They were fully and properly instructed as to the different degrees of homicide, and the necessity of finding the different elements of these crimes to be proven beyond a reasonable doubt before any verdict could be rendered against the accused. It is a misconstruction of the charge to say that the court in effect intimated to the jury that the defendant did not contest the death of Barbuto as stated in the indictment, and that the accused was therefore guilty of murder in the first degree. *State* v. *Marx,* 78 Conn. 18, 22, 60 Atl. 690.

Objection is made because the court said that "the testimony of the accused as to the mode in which the firing happened tends also to show that he did not fire the shot in a sudden and great heat of passion aroused in fighting, with an intent to kill and injure Barbuto." Apparently the court in this connection was attempting to explain the defendant's claim that he was not guilty of the crime charged, or at the most his offense was that of manslaughter. So far as there was an ex-

pression of an opinion by the court upon this subject, it was in favor of the accused and not against him.

Again, it is urged that the court erred, when referring to the mental condition of the accused, in saying that "it is, perhaps, possible, that a man intending murder should drink intoxicating liquors to stimulate him in executing his intent. You must consider all the evidence in the case that can assist you in determining the question of intent, premeditation and deliberation. . . . There is some testimony that the accused was in a partially intoxicated condition (half full, it was said) at about ten o'clock, when he came into the saloon for the last time." It is said that the court should have called the attention of the jury to the fact that there was testimony that the accused at this time was so far under the influence of liquor that he was unable to know what he was talking about.

This criticism is not well founded. It is apparent that the defendant did not place much reliance upon intoxication as a defense. The instruction on this subject was fair, and if there were expressions in it that indicated that the judge had an opinion upon the question of fact, he was careful to guard the jury from any improper influence from that source.

The following passage from the charge, immediately following the remarks last complained of, illustrates the manner in which the court treated this subject. It was stated that, "where, however, a specific intent is a necessary element of a crime, as the specific intent to kill is in the crime of murder in the first degree, the fact of intoxication if it existed, should, of course, be taken into consideration; and if an accused person had so far lost his reason from intoxication that he was unable to have and entertain such intent and so did not have such intent, such person should not be convicted of such offense where such specific intent is necessary."

It is to be noticed that counsel for the accused have selected several extracts from the instructions, and have assigned error upon each of them. When this method is adopted it is only by taking the charge as a whole, or some part of it which, standing by itself, covers the question under consideration, that this court can fairly determine whether there is error. The charge taken as a whole is not objectionable. *State* v. *Washelesky*, 81 Conn. 22, 26, 70 Atl. 62.

The defendant's attorneys in argument commented upon the habits and characteristics of the Italian race generally, as the same had been shown in our courts and in our communities. During the closing argument, and apparently in replying to them, the State's Attorney said: "Why, gentlemen, even since this trial began, one Italian has shot another in this country and has fled to Italy."

It frequently happens in the trial of cases to the jury that counsel are tempted to indulge in verbal disputes in which they make statements not based upon the evidence. This method of the trial of cases is reprehensible, and has been frequently disapproved of by this court. But it is fair to assume that jurors selected in a capital case are men of good sense and judgment, who will not seriously entertain arguments of the character complained of. While the remark of the State's Attorney was improper, it is not a sufficient ground for granting a new trial, especially as there was no objection made or exception taken to it in the court below. *State* v. *Washelesky*, 81 Conn. 22, 28, 70 Atl. 62.

There is no error.

In this opinion the other judges concurred.