## THE STATE OF CONNECTICUT *vs.* JOHN FELTOVIC.

Third Judicial District, Bridgeport, October Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued November 5th—decided November 25th, 1929.

*Leo Davis,* with whom, on the brief, were *Robert G. DeForest* and *Samuel Friedman,* for the appellant (the accused).

*William H. Comley,* State's Attorney, with whom, on the brief, was *Lorin W. Willis,* Assistant State's Attorney, for the appellee (the State).

WHEELER, C. J. Only one of the grounds of appeal is pressed by counsel for the accused in their argument and brief. Consideration of this requires that we have before us the salient facts which each of the parties claimed to have proved.

The State claimed: On Saturday night, March 23d, 1929, a store of the Great Atlantic and Pacific Tea Company in Bridgeport had been closed for business, the shades on the front door drawn down and the window lights extinguished, but it was possible to see into the store from the front show windows. Shortly after ten o'clock Jacobs, the manager of the store, sent two of the clerks out to collect a bill. On leaving they unlocked the door and it remained unlocked until after the homicide. On this evening Feltovic, the accused, went to a social club, procured a fully loaded revolver which he kept there and left the club at about nine-thirty o'clock in an automobile driven by Pavlick to this store. They remained in the vicinity of the store until two clerks came out of the store when the accused opened the door of the store entering it with the revolver in his hand and with the intent of robbing Jacobs, and walked outside the store counter to the center of the store where Jacobs, behind the counter, was leaning over, writing in the store books. With his gun held low and pointed at Jacobs the accused came

close to the counter saying: "Give me your money."
Jacobs made some reply and started toward the front
of the store, keeping back of the counter. The accused
thrust his revolver forward saying "Come on" and then
stepped toward the front of the store keeping his re-
volver all of the time pointed at Jacobs. When near
the front end of the counter Jacobs stopped, picked up
a pair of scales with both hands and stepped toward
the accused holding the scales at the level of his face
and attempted to strike him. Jacobs was then within
two or three feet of the accused who was nearer the
front door than Jacobs and in a position where he could
have easily opened the door and swung it against
Jacobs. As Jacobs was attempting to strike him the
accused shot him, from which he died in about twenty
minutes. The accused then opened the door, left the
store and closed the door behind him.

The accused does not contradict most of the claims of
the State. He does, however, claim that Jacobs, upon
approaching the front end of the counter, hurled an
iron weight at him, which struck him on the shoulder,
and then held up the scales in the manner claimed by
the State and with intent to strike the accused; there-
upon in his excitement the accused says he fired the
fatal shot.

The accused also claims, that he armed himself with
the revolver for the sole purpose of putting Jacobs in
fright, that from the time Jacobs started to walk to
the front of the store he himself backed toward the
door with the intention of getting out of the store, that
he would have achieved this had not Jacobs made the
attack upon him and that he did not intend to kill
Jacobs but that the firing of the shot was occasioned
by the great stress and excitement he was laboring
under due to the attack of Jacobs.

Counsel for the accused do not press their claims of

self-defense. Had the jury found in accordance with the uncontested facts, supplemented by the additional facts which the accused claimed to have proved, there would have been no possible basis to sustain that defense in our law. The court instructed the jury that murder is the unlawful killing of a human being with malice aforethought. It instructed them as to what would constitute an unlawful killing of a human being and excluded from their consideration an explanation of what would constitute legal justification or excuse for a homicide, or what extenuation would reduce the unlawful homicide to manslaughter, since neither claim had been made in behalf of the accused. It charged that if the jury found proven beyond a reasonable doubt the killing and that it was perpetrated without legal justification or excuse and without circumstances of legal extenuation the crime would be murder, and while not expressly so stating, the court impliedly charged that this under our statute would be murder in the second degree. The court further instructed the jury that under our statute all murder perpetrated by means of poison, or by lying in wait, or by any other kind of wilful, deliberate and premeditated killing, or committed in perpetrating, or in attempting to perpetrate, any arson, rape, robbery or burglary or injury to any person or property by means of any explosive compound, shall be murder in the first degree.

The court then defined at length what is meant by a wilful, deliberate and premeditated killing and in effect charged that if the jury found that the accused armed himself with a deadly weapon and deliberately shot and killed Jacobs, who was in charge of the store, which the accused entered for the purpose of robbery, the killing within the meaning of the statute would be wilful, deliberate and premeditated, and would be murder in the first degree. The court in its concluding

instruction charged that if the jury found that the accused killed Jacobs in the manner charged in the indictment with malice aforethought and committed the crime wilfully, deliberately and premeditatedly then the verdict should be guilty of murder in the first degree. The charge was too favorable to the accused. The statute made the murder that of the first degree if it was perpetrated in committing or in attempting to commit a robbery. A murder so committed does not have to have been done wilfully, deliberately and premeditatedly to make it one of the first degree. Presumably the legislature considered that a murder perpetrated in committing, or in attempting to commit a robbery or any other of the crimes enumerated in the statute was of so heinous a character as to justify its being placed within the category of murders which are of the first degree without proving as an indispensable element that the murder was committed wilfully, deliberately and premeditatedly.

The presentation to the jury of the meaning of malice aforethought was in the manner generally customary in this jurisdiction. As a rule it is not only difficult but we fear impossible to convey to a jury a clear conception of the term malice aforethought in our law. An instruction upon this subject would be sufficient which defined murder, supplementing the definition by an instruction that to constitute murder there must be an unlawful homicide, that is, one committed without justification or excuse, giving adequate explanation of the meaning of these terms where there are present circumstances in justification or excuse, and that where the homicide is unlawful and there are no circumstances attending the killing which mitigate or extenuate it, thus reducing the crime to manslaughter, the law implies malice and that the unlawful homicide is committed with malice aforethought. *State* v. *McGuire,*

84 Conn. 470, 485, 80 Atl. 761; *State* v. *Marx,* 78 Conn. 18, 23, 60 Atl. 690; *State* v. *Williams,* 90 Conn. 126, 129, 96 Atl. 370; Malice Aforethought, JUSTICE CURTIS, 19 Yale Law Journal, 639, 644.

The court should also charge, in a case such as this, that the law implies malice where the unlawful killing is with a deadly weapon, as a revolver and no circumstances extenuating it are present. *State* v. *Litman,* 106 Conn. 345, 138 Atl. 132; *State* v. *Marx, supra.* In the case of an unlawful homicide by a bullet from a revolver fired in perpetrating or in attempting to perpetrate a robbery, the law will imply that the homicide was done not only with malice but with malice aforethought. "The portion of the charge," said Rugg, C. J., in *Commonwealth* v. *Madeiros,* 255 Mass. 304, 151 N. E. 297, "to the effect that when a defendant by some act done in the commission or attempted commission of some crime of the degree of felony causes the death of a human being, the killing is with malice aforethought and is murder, was correct." See also *Cook* v. *People,* 60 Colo. 263, 269; 29 Corpus Juris, 1117. An unlawful homicide without extenuating circumstances reducing it to manslaughter would be murder and of the second degree, unless the murder fell within one of the classes designated by the statute as murder in the first degree. The killing of Jacobs was unlawful and committed in the attempt to perpetrate a robbery, it therefore became by force of the statute murder in the first degree upon the State's proving beyond a reasonable doubt that the homicide was a murder. *State* v. *Cross,* 72 Conn. 722, 729, 46 Atl. 148; *Commonwealth* v. *Carelli,* 281 Pa. St. 602, 604, 127 Atl. 327; *Commonwealth* v. *Lessner,* 274 Pa. St. 107, 111, 118 Atl. 24.

If the jury found that the killing of Jacobs by the accused was unlawful and a murder committed in at-

tempting to perpetrate a robbery our law did not require them to go further and find that the murder was done wilfully, deliberately and premeditatedly. The verdict implies that they did so find and in conformity with the instructions of the court.

The single ground of error which counsel for the accused pursue is the refusal of the court to charge as requested that: "If the accused, at the time of the killing, had abandoned his purpose and was attempting to leave the premises in question and while attempting to leave the premises the actual killing resulted, because of an altercation with the deceased, or in fear of being hit by the scales, then, in that event, the accused would be entitled to a verdict of murder in the second degree." In testing the court's refusal to so charge and its failure to in any way charge upon the subject of abandonment we must assume that the jury might reasonably have found the facts in accordance with the claims of the accused. The facts essential to this point under the claims of the accused were that as Jacobs walked behind the counter slowly toward the front end which was quite close to the entrance to the store the accused stepped backward toward the entrance to the store, at all times keeping his revolver pointed at Jacobs, and that Jacobs as he approached the front end of the counter hurled an iron scale weight at the accused striking him on the shoulder and then picked up a pair of scales and raised them with intent to strike the accused when Jacobs was two or three steps from him and as the accused stood close to the front entrance he shot and killed Jacobs. It is to be noted, that at no time prior o the homicide did the accused indicate by spoken word that he had abandoned his felonious purpose, nor indicate this by his conduct. It is true he was backing away from Jacobs and going toward the front door, but from the moment

of his entrance into the store he held his revolver in his hand, and from the moment when he advanced upon Jacobs demanding his money until the fatal shot he kept the revolver pointed at Jacobs. If the accused ever entertained a purpose, to abandon his attempt at robbery, and the use of his revolver for the purpose of intimidating Jacobs into yielding to his demands, it was a mere mental purpose unexpressed by spoken word or conduct; of such the law takes no cognizance. Had the accused gone further and said to Jacobs, "I have changed my mind, I abandon my purpose to rob you," that would not have constituted an abandonment in the eye of the law so long as he continued to cover Jacobs with his revolver. The abandonment must have included the actual abandonment of the use of the revolver. The conduct of the accused must have coincided with his spoken word before the question of the abandonment of his felonious purpose could arise. The law deals with reasonable probability; it will not regard a defense of this character when the spoken word at the time of the commission of the offense, or the spoken word after the offense, is not supported, reasonably, by the conduct of the accused at the very time of the offense. There must be a substantial act or acts which make reasonable proof that the abandonment is real and not feigned.

The principle invoked in behalf of the accused is dependent upon the facts claimed to have been proved by him showing a voluntary and free abandonment of his purpose to perpetrate a robbery or to attempt to perpetrate one before his purpose has been put into action by overt act or acts in carrying out the intended crime. An intent or purpose to commit the crime of robbery may be abandoned at any time before the intent or purpose has by some act become an attempt to commit that crime; at that point the crime of an

attempt to commit the robbery has been committed. The accused cannot thereafter escape the penalty of his attempt to commit the crime by repentance after that crime has been committed. "A mere intent to commit a crime, which exists in the mind only, and has not induced and characterized an act, is not a punishable offense; and therefore an 'attempt' necessarily includes the intent, and also 'an act of endeavor' adapted and intended to effectuate the purpose." *State* v. *Wilson*, 30 Conn. 500, 503; *Glover* v. *Commonwealth*, 86 Va. 382, 10 S. E. 420. "So purchasing a gun is not indictable as an attempt, but an aiming of the gun is." 1 Wharton on Criminal Law (11th Ed.) § 220. If the purpose to commit the robbery had been abandoned before an act constituting an attempt had been carried out by the accused he would have been guilty of no crime. *State* v. *Allen*, 47 Conn. 121, 140; *Pinkard* v. *State*, 30 Ga. 757; *People* v. *Stewart*, 97 Cal. 238; Clark's Criminal Law (3d Ed.) p. 150; 1 Wharton Criminal Law (11th Ed.) § 226.

Similarly, if the attempt to commit the robbery had been actually abandoned before the commission of the robbery but after the commission of the crime of an attempt to perpetrate the robbery the accused while guilty of the attempt to perpetrate the robbery would not be guilty of a robbery.

The facts as claimed by the accused show beyond a reasonable doubt that the accused committed the crime of an attempt to perpetrate a robbery and that at no time did he abandon that attempt but that in the commission of that crime he shot and killed Jacobs. Jacobs was assailed by the accused with a deadly weapon, in his place of business, in such manner as to have justified in him the belief that he was in imminent danger of great bodily harm; under such circumstances he was not obliged to retreat but had the right

to defend himself and his employer's property even to the extent of taking his assailant's life. Duty of Retreating in Homicide, Irving Browne, 48 Cen. L. J. 5. On the other hand the facts, precisely as the accused claims them, gave him no legal right to shoot Jacobs, or to take his life.

Only one conclusion could reasonably have been reached by the jury and that was that the killing of Jacobs by the accused was a ruthless murder, and under our law murder in the first degree. Although the only point presented upon the appeal was that of abandonment, the gravity of the charge against the accused has led us to search the record through to see if harmful error was raised upon the appeal, or in the record. We find none. The verdict of the jury was inescapable.

There is no error.

In this opinion the other judges concurred.