STATE OF CONNECTICUT *v.* MILTON GREEN
(12562)

PETERS, C. J., HEALEY, SHEA, GLASS and COVELLO, Js.

Argued February 10—decision released April 5, 1988

*Ernest F. Teitell,* with whom were *David Golub* and, on the brief, *Leora Hermann* and *Robert N. Chatigny,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attoney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Jonathan C. Benedict* and *Richard F. Jacobson,* assistant state's attorneys, for the appellee (state).

SHEA, J. The defendant was convicted after a jury trial of felony murder in violation of General Statutes § 53a-54c.[1] In his appeal from the judgment he claims that the trial court erred: (1) in denying his motion to suppress the oral statements he made on April 14, 1983, to the Bridgeport police; and (2) in failing to instruct the jury that attempted robbery was a lesser included offense of felony murder. We conclude that the trial court erred both in admitting the oral state-

---

[1] "[General Statutes] Sec. 53a-54c. FELONY MURDER. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, sexual assault in the first degree with a firearm, sexual assault in the third degree, sexual assualt in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another partici- pant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirma- tive defense that the defendant: (A) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commis- sion thereof; and (B) was not armed with a deadly weapon, or any danger- ous instrument; and (C) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (D) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

ments of the defendant made on April 14, 1983, to the Bridgeport police, and in failing to instruct the jury that attempted robbery, in the circumstances of this case, was a lesser included offense of felony murder. We find error and remand the case to the trial court for a new trial.

From the evidence at trial the jury could reasonably have found the following facts. The defendant, Milton Green, approached Charles Belcher and Jeffrey Tate on the evening of April 9, 1983, and asked them if they wanted to make some money. Tate testified that he had inferred from the defendant's conversation at that time that the defendant wanted the three to commit a robbery. The three walked to Reservoir Avenue in Bridgeport. There they saw Dean Brush, who had just delivered a pizza. Tate asked Brush for a ride. After Brush agreed, the defendant, Tate, and Belcher entered Brush's automobile. The defendant handed a gun to Tate, who put the weapon to Brush's head. Brush stopped his car, and grabbed the gun away from Tate. The defendant and Brush then struggled for control of the gun; during this struggle inside the car one shot went off, which struck Brush. Both continued struggling, and eventually their fight moved from inside the car to the ground outside of the car. Finally, Belcher hit Brush in the face, and the defendant grabbed the gun. The defendant moved back four to five feet, and shot Brush three times. The defendant, Tate and Belcher then ran from the scene. A Bridgeport police officer, William Heckley, discovered the deceased victim. Harold Carver, a forensic pathologist, performed an autopsy and at the trial testified that Brush had died as a result of four bullet wounds.

## I

The defendant claims he was denied his right to due process, and his privilege against self-incrimination, in violation of the fifth, sixth and fourteenth amendments

to the United States constitution and article first, § 8, of the Connecticut constitution, because the court, *McKeever, J.,* denied his motion to suppress two oral statements he had made on April 14, 1983, to the Bridgeport police despite the failure of the police to advise the defendant of his rights under *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). This ruling was adopted by the trial court, *Callahan, J.,* as the law of the case. See *State* v. *Hoffler,* 174 Conn. 452, 462–63, 389 A.2d 1257 (1978); *State* v. *Mariano,* 152 Conn. 85, 91, 203 A2d 205, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962 (1964). In view of our conclusion, that both of these statements were inadmissible under the federal constitutional principles established in *Miranda,* we need not consider the defendant's state constitutional arguments, nor his claim that the state failed to satisfy its federal and state constitutional burden of proving that these two oral statements were voluntarily made. We will consider separately the admissibility of the two oral statements, and then will examine whether their erroneous admission was harmful.

A

On April 11, 1983, Detective Leo Krusinski of the Bridgeport police department received an anonymous phone call from a person who claimed that the defendant was involved in or had knowledge about the murder of Brush. Krusinski and Detective Michael DeCarlo spoke with the defendant the following day. The defendant told Krusinski and DeCarlo that he had been in the area of Reservoir Avenue shortly before the homicide took place and had seen people talking to Brush. The defendant agreed to go to the police station the next day, and to give a statement to the police. On April 13, the defendant failed to appear at the police station. Krusinski called the defendant, who informed the detective that he did not have a ride. Krusinski and DeCarlo offered him a ride and the defendant accepted.

The defendant spent three and one-half hours at the police station, and gave a statement implicating Kyle Freeman in the murder of Brush. The defendant then left the police station, but later returned at the request of the police to identify Freeman. Krusinski and DeCarlo checked out an alibi provided by Freeman, and became convinced that he had no part in the murder of Brush. The defendant then gave a second statement on April 13, 1983, to Krusinski. The defendant stated that he was present during the murder of Brush, but that he had nothing to do with its commission. He implicated Tate and Belcher in the murder of Brush.

The police did not give *Miranda* warnings to the defendant when he made these two statements on April 13, 1983. Krusinski and DeCarlo both testified that they did not consider the defendant to be a suspect at that time. The police allowed the defendant to leave the police station after he had made his second statement on April 13, 1983, and they told him that he was not under arrest. The defendant concedes that he was not in custody on April 13, 1983, that the police were not obligated to give him *Miranda* warnings on that day, and that the two statements he made on that day were properly admitted at his trial.

The defendant contends, however, that the oral statements he made to the police on April 14, 1983, were obtained in violation of *Miranda*. The police arrested both Tate and Belcher between 12:30 p.m. and 1 p.m. on April 14, 1983. Both told the police that the defendant had been a participant in the robbery, and had been the person who had shot and killed Brush. The police informed George Ganim, the defendant's attorney, that they wished to ask the defendant further questions in connection with the murder of Brush. The defendant and his father arrived at the police station at approximately 2 p.m. that same day. The defendant's father told Krusinski and Inspector Anthony Fabrizi that the

defendant had not told the police the complete truth the night before, and that the defendant knew more about the murder of Brush. At this time, the defendant, his father, Krusinski and Fabrizi were standing in a hallway.

The defendant was then taken into a line-up room by Krusinski and Fabrizi while his father remained outside in the hallway. The defendant maintains that these two police officers deliberately separated him from his father to help them elicit incriminating statements from him. Fabrizi admitted during cross-examination by the defendant's counsel, "I asked [the defendant's father] to stay outside [of the line-up room]." The defendant's counsel asked Fabrizi, "Why didn't you invite the father in?" Fabrizi answered, "We find in investigations that the presence of a parent sometimes can impede an admission against interest by a family member. Interviews are conducted alone, not with family members present." The defendant's counsel then asked, "So, you intentionally kept the father out; isn't that correct?" Fabrizi responded, "Yes, if you want to characterize it as intentionally, yes."

The defendant argues that he was in custody as soon as the police deliberately separated him from his father, and that the police were obligated to provide him with *Miranda* warnings at that time. We conclude that the defendant was in custody when he was separated from his father, and led into the line-up room. "Two conditions must exist before a criminal suspect is entitled to *Miranda* warnings: (1) the defendant must be in the custody of law enforcement officials; and (2) the defendant must be subjected to interrogation." *State* v. *Burak,* 201 Conn. 517, 531, 518 A.2d 639 (1986). A person is in custody only if a reasonable person would have believed he was not free to leave. *State* v. *Hoeplinger,* 206 Conn. 278, 286–87, 537 A.2d 1010 (1988). "We must look at the totality of the circumstances of the ques-

tioning in order to determine whether a 'reasonable person' would have construed those circumstances as placing him in a custody situation." Id., 287. On April 14, 1983, the defendant was sixteen years old, and had never been convicted of a crime. The police never told the defendant on April 14, 1983, that he was free to leave. The state maintains that the defendant knew that he was free to leave at any time after Krusinski and Fabrizi brought him into the line-up room because the police had allowed him to leave the police station the previous day on two occasions. We might agree with the state's argument in this regard if the defendant had been an adult, or if he had greater experience with the criminal justice system. In light of both the defendant's youth and his inexperience with the police, we hold that the defendant was in custody based on the totality of the circumstances despite the fact that the police never told the defendant that he was under arrest.

The state maintains that, even if the defendant was in custody after he was separated from his father and brought into the line-up room, the police were not required to give him *Miranda* warnings at that time because the defendant was not subjected to an "interrogation." *State* v. *Burak,* supra. "[S]ince the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." (Emphasis omitted.) *Rhode Island* v. *Innis,* 446 U.S. 291, 301–302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). It is undisputed that before the defendant made any statements to the police on April 14, 1983, Tate and Belcher had told Fabrizi of the defendant's participation in the crime and that Fabrizi separated him from his father to elicit "admissions against interest" from him. The defendant did not begin to make incriminating statements on that date until after Fabrizi told him,

"I'm aware that you have given a statement yesterday; however, is there something else you want to tell us about this thing because it doesn't fit with what we know." The defendant continued to deny that he had participated in the crime, but for the first time admitted that he had returned to the scene after the shooting had started to prevent Tate from shooting Brush again. The defendant denied firing any shots, but stated that the gun had gone off during a struggle with Tate over the gun, with a bullet striking Brush in the thigh. He denied having any intent to kill Brush. Fabrizi's comments were reasonably likely to elicit an incriminating response, and, therefore, we conclude that the police subjected the defendant to a custodial interrogation. We hold that the court, *McKeever, J.,* erred in refusing to suppress the first oral statement made by the defendant on April 14, 1983, to the police.

### B

After the first interrogation on April 14, 1983, the police called the defendant's father and mother into the interrogation room. The police had not yet advised the defendant of his *Miranda* rights. The defendant repeated the explanation he had given during the first interrogation earlier that day, but revealed in addition that he had injured his leg during a struggle with Brush.

The state's brief fails to address the defendant's contention that his second oral statement to the police on April 14, 1983, was obtained in violation of *Miranda* v. *Arizona,* supra. The defendant argues that it was clear once he had admitted that he was present after the shooting began and had "accidentally" shot Brush during his alleged struggle with Tate, that the police would not have let him leave the station. The state has not challenged the validity of this assertion. We conclude that the defendant was clearly in custody after he made his first oral statement. There is no question

but that the second statement was affirmatively elicited by Fabrizi, who asked the defendant "to repeat what he had said in front of his father and mother." We conclude that the defendant's second statement on April 14, 1983, was obtained through custodial interrogation and, therefore, that the police should have informed him of his *Miranda* rights before he made that second statement. We hold that the court, *McKeever, J.,* erred in failing to suppress the second oral statement made by the defendant on April 14, 1983.

### C

When an error is of constitutional significance the state has the burden of showing that it was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 24–26, 87 S. Ct. 824, 17 L. Ed. 2d 705, reh. denied, 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967). The state has not contended in its brief or at argument that, if this court should conclude that the two oral statements made by the defendant April 14, 1983, were erroneously admitted, the error, nevertheless, was harmless beyond a reasonable doubt. Since the defendant at trial testified in accordance with his April 13, 1983 statement that although he was present during the crime, he was not involved in its commission, his improperly admitted April 14, 1983 statements that implicated him in the robbery as well as the shooting cannot be regarded as harmless under the constitutional standard. Accordingly, we must conclude that the state has failed to meet its burden in this regard. We hold, therefore, that the erroneous admission of the two oral statements made on April 14, 1983, constituted harmful error.

### II

The final claim of the defendant is that the trial court, *Callahan, J.,* erred in refusing to instruct the jury on the lesser included offense of attempted robbery under

General Statutes § 53a-49.[2] This issue is likely to arise during a retrial of the defendant on the charges in the case at bar, and, therefore, we shall review this claim.

The defendant argues that the evidence at the trial would have entitled the jury to believe that he had agreed to participate in a robbery of Brush and had committed a substantial step in furtherance of the crime by entering Brush's automobile, but then terminated his involvement in the planned crime. The defendant testified that while he was in Brush's car he told Tate not to do anything to Brush. The defendant argues that if the jury believed that he had changed his mind about committing the robbery of Brush, it could have found him guilty of attempted robbery, but not guilty of felony murder because it would have found that Brush's death did not occur in the course or in the furtherance of a crime in which the defendant was still participating. See *State* v. *Feltovic*, 110 Conn. 303, 309–11, 147 A. 801 (1929); *People* v. *Marwig*, 227 N.Y. 382, 387, 125 N.E. 535 (1919).

At a charge conference prior to the conclusion of the trial, the defendant requested that the trial court instruct

[2] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

"(b) Conduct shall not be held to constitute a substantial step under subdivision (2) of subsection (a) unless it is strongly corroborative of the actor's criminal purpose. Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law: (1) Lying in wait, searching for or following the contemplated victim of the crime; (2) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (3) reconnoitering the place contemplated for

the jury on the lesser included offense of attempted robbery. After hearing argument on the request, the trial court refused to give any such instruction, and subsequently rejected the defendant's written request to charge on attempted robbery.

In *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980), we held: "A defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." The state does not dispute that the defendant satisfied the second and third conditions of the *Whistnant* test. The second condition was satisfied because one could not commit felony murder in the

the commission of the crime; (4) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (5) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (6) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; (7) soliciting an innocent agent to engage in conduct constituting an element of crime.

"(c) When the actor's conduct would otherwise constitute an attempt under subsection (a), it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a comlete and voluntary renunciation of his criminal purpose."

manner charged in this grand jury indictment[3] without first committing the lesser included offense of attempted robbery. The third condition was met because the jury could have found that the defendant entered Brush's car for the purpose of committing a robbery and, on that basis, could have convicted him of attempted robbery under § 53a-49.

The state argues that the defendant has failed to comply with the first condition of the *Whistnant* test. We have held that a proposed instruction is not "appropriate" under *Whistnant* unless it contains a complete statement of the essential facts and law justifying the charge in the form requested. *State* v. *Ostroski,* 201 Conn. 534, 557, 518 A.2d 915 (1986); *State* v. *McIntosh,* 199 Conn. 155, 160, 506 A.2d 104 (1986). We need not discuss the adequacy of the defendant's request, however, because a revised request will undoubtedly be submitted at the new trial we have ordered.

The state also points out that the defendant in his request to charge specifically made a request that the trial court not charge on the affirmative defense to felony murder under § 53a-54c.[4] The state maintains that a defendant is not entitled to an instruction on attempted robbery unless he also requests a charge on the affirmative defense to felony murder under § 53a-54c. The state relies in this regard on *State* v. *Bond,* 201 Conn. 34, 38, 513 A.2d 95 (1986): "A defendant accused of felony murder who does not claim the

---

[3] "The Grand Jurors within and for said Judicial District accuse MILTON GREEN of the City of Bridgeport in said Judicial District, of the crime of Felony Murder in that on the 9th day of April, 1983 at approximately 8:30 p.m. at 60 Pitt Street, Bridgeport, in said Judicial District, the said MILTON GREEN acting either alone or with one or more persons, did attempt to commit robbery, and in the course of and in furtherance of such crime or of flight therefrom, he or another participant did cause the death of DEAN BRUSH in violation of Section 53a-54c of the Connecticut General Statutes."

[4] See footnote 1, supra.

benefit of the statutory affirmative defense is generally not entitled to an instruction on the lesser offense which underlies the charge of felony murder. This is so because, *assuming the element of causation is not in dispute,* guilt of the lesser offense constitutes guilt of felony murder. *State* v. *Morin,* 180 Conn. 599, 604–10, 430 A.2d 1297 (1980). A defendant who claims the benefit of the affirmative defense, however, says, in effect, that 'although I may have participated in the underlying crime, I did not cause the homicidal act or know that any of my fellow participants was armed with a deadly weapon.' Should the jury find satisfied the four requirements of the affirmative defense, then they would be justified in finding the defendant not guilty of felony murder, but guilty of the underlying offense.'' (Emphasis in original.)

The defendant argues that the rationale of *Bond* is inapplicable because he contends that he terminated his involvement in the attempted robbery before potential deadly force was used or threatened. See *State* v. *Feltovic,* supra; *People* v. *Marwig,* supra. We agree with the defendant's argument that, if the jury believed that the defendant had committed a substantial step in furtherance of a planned robbery, such as enlisting Tate and Belcher for that purpose, but had immediately terminated his involvement in the attempt upon entering Brush's automobile, then he would have no vicarious felony murder liability for Tate's or Belcher's subsequent homicidal acts. See *State* v. *Feltovic,* supra; *People* v. *Marwig,* supra. Thus, in such a state of facts, whether or not the defendant could satisfy the four requirements of the affirmative defense for felony murder under § 53a-54c,[5] the state could not convict him of felony murder, because the murder would not have occurred during or in furtherance of his attempted robbery.

[5] See footnote 1, supra.

Lastly, the state argues that, since the defendant denied any involvement in the crime, he was not entitled to an instruction on the lesser included offense of attempted robbery because he did not satisfy the fourth condition of *Whistnant.* In *State* v. *Manley,* 195 Conn. 567, 579, 489 A.2d 1024 (1985), we concluded: "It is not at all improper that the defendant, requesting a lesser included offense instruction, bear an obligation, weak though it may be, to demonstrate that there is evidence 'sufficiently in dispute' to warrant giving the requested instruction. See *Rouse* v. *United States,* 402 A.2d 1218, 1221 (D.C. App. 1979); *Day* v. *United States,* 390 A.2d 957, 962 (D.C. App. 1978). The fourth condition of *Whistnant* specifically requires that the 'proof' be 'sufficiently in dispute.' Such proof is 'sufficient' when it is 'marked by [a] quality [such as] to meet with the demands, wants or needs of a situation . . . .' Webster, Third New Internatinal Dictionary. In the *Whistnant* context, therefore, the proof is 'sufficiently in dispute' where it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty on the lesser included offense. This requirement serves to prevent a jury from capriciously convicting on the lesser included offense when the evidence requires either conviction on the greater offense or acquittal."

The fact that a defendant denies having any involvement in a crime, however, does not necessarily preclude him from obtaining an instruction on a lesser included offense if there are facts in evidence that would reasonably support such an instruction. See *State* v. *Burge,* 195 Conn. 232, 235, 242–45, 487 A.2d 532 (1985) (lesser included offense instruction required despite defendant's reliance on alibi defense); *State* v. *Harris,* 189 Conn. 268, 271–75, 455 A.2d 342 (1983) (same). The defendant testified that after he had entered Brush's automobile he told Tate, "don't do nothing crazy." The

defendant then testified, "[Tate] didn't say nothing, so I figured it was, you know, all right." This evidence was sufficient to support the defendant's request for an instruction on the lesser included offense of attempted robbery. Accordingly, we hold that if the defendant produces similar testimony at the new trial and files a proper request, the jury should be instructed upon the lesser included offense of attempted robbery.

There is error, the judgment is set aside and the case is remanded to the trial court for a new trial.

In this opinion the other justices concurred.